**ATLANTIC CITY ELECTRIC COMPANY et al., Plaintiffs,**

v.

**I-T-E CIRCUIT BREAKER COMPANY, Defendant.**

United States District Court
S. D. New York.
Nov. 23, 1965.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Appalachian Power, Ohio Valley Electric Co., and others, co-counsel for Atlantic City Electric Co., and others; Milton Handler, James B. Henry, Jr., and David Klingsberg, New York City, of counsel.

Webster, Sheffield, Fleischmann, Hitchcock & Chrystie, New York City, co-counsel for Atlantic City Electric Co., and others; William H. Hogeland, Jr., New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for Consumers Power, Alabama Power, Ohio Edison Co., and others; Merrell E. Clark, Jr., and James T. Boorsch, New York City, of counsel.

LeBoeuf, Lamb & Leiby, New York City, for Consolidated Edison, Niagara-Mohawk, Arkansas Power & Light, Orange & Rockland Utilities, and others; Taylor R. Briggs, New York City, of counsel.

Coudert Brothers, and Reid & Priest, New York City, for Dallas Power & Light, Texas Electric Service, Carolina Power & Light, Utah Power, and others; Joseph A. McManus, and James C. Pressey, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for American Telephone & Telegraph; Leonard Joseph, New York City, and R. J. Fisher, of counsel.

Sullivan & Cromwell, New York City, for El Paso Natural Gas, Allegheny Power, Potomac Electric Power, and others; John S. Allee, New York City, of counsel.

Naylon, Aronson, Huber & Magill, New York City, for New York Electric & Gas Corp.; Howard M. Schmertz, F. I. Fallon, New York City, and Eugene R. Moramarco, of counsel.

Feldman, Kramer, Bam & Nessen, New York City, for Republic of Indonesia; Foster Bam, and Michael O. Finkelstein, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., for State of New York, New York State Thruway Authority; Mathias Lloyd Spiegel, Special Counsel, Jules Buchwald, Deputy Asst. Atty. Gen., of counsel.

Sidney Goldstein, New York City, for Port of New York Authority; Alan J. Littau, New York City, of counsel.

Thomas F. Moore, Jr., New York City, for New York State Power Authority; Scott B. Lilly, New York City, of counsel.

White & Case, New York City, for General Electric Co.; Edgar E. Barton, Kevin L. Carroll, and James Bruce, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for Westinghouse Electric Corp.; Ralph L. McAfee, and George J. Wade, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for I–T–E Circuit Breaker Co.; Carroll E. Dubuc, and Peter L. Dawson, New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Allis-Chalmers Manufacturing Co.; Robert B. Fiske, Jr., Winthrop J. Allegaert, and Craig Emerson, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Federal Pacific Electric Co.; Jacob Imberman, New York City, of counsel.

Clark, Carr & Ellis, New York City, for Southern States, Inc., David J. Sweet, New York City, of counsel.

Laporte & Meyers, New York City, for Schwager-Wood Corp.; Ernest S. Meyers, and Leo N. Hirsch, New York City, of counsel.

Alexander & Green, New York City, for H. E. Porter Co.; Edward E. Rigney, New York City, of counsel.

Royall, Koegel, Harris & Caskey, New York City, for Cutler-Hammer, Inc.; Herbert C. Earnshaw, and Charles F. Young, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for Wagner Electric Corp. and Moloney Electric Co.; James W. Lamberton, New York City, of counsel.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for McGraw Edison Co., Hubbard & Co., Ohio Brass Co., Lapp Insulator Co. and Clark Controller Co., C. H. Wheeler; Thomas F. O'Toole, New York City, of counsel, Miles W. Kirkpatrick, Philadelphia, Pa., and Morris L. Chucas, Philadelphia, Pa., of counsel for C. H. Wheeler.

Austin, Burns, Appell & Smith, New York City, for Ingersoll-Rand; Joseph W. Burns, New York City, of counsel.

Shea, Gallop, Climenko & Gould, New York City, for Worthington Corp.; Jesse Climenko, and Martin I. Shelton, New York City, of counsel.

Harold E. Kennedy, New York City, for Foster Wheeler Corp.

Casey, Lane & Mittendorf, New York City, for Kuhlman Electric Co.

FEINBERG, District Judge.

In 1960, there were a series of antitrust indictments in Philadelphia against manufacturers of electrical equipment and certain of their employees. The indictments charged violations of the Sherman Act in twenty product lines of electrical equipment. With the exception of a few individuals, defendants all entered pleas of guilty or nolo contendere, which culminated in 1961 in judgments of convictions. Thereafter, over 1,900 civil antitrust suits were brought against the manufacturers by purchasers of electrical equipment in more than twenty product lines. In many of these cases there were claims by multiple plaintiffs for injuries sustained in more than one product line so that the number of separate antitrust claims totalled well over 25,000. The suits were filed in thirty-five districts.

To cope with the enormous problems posed by this unprecedented mass of litigation, the Judicial Conference of the United States in 1961 created a special subcommittee of its standing committee on Pre-Trial Procedures and Practices. The new subcommittee has come to be known as the Co-ordinating Committee for Multiple Litigation of the United States District Courts ("Co-ordinating Committee"), and its members were appointed by Chief Justice Warren in January 1962. Since its inception, the Co-ordinating Committee has recommended courses of action to the individual district judges in dealing with the varied and complex problems raised by this liti-

gation of national scope.[1] However, orders have been entered in each district only upon individual consideration by the respective district judges after according the parties immediately affected in the district an opportunity to be heard on each proposed order.

The electrical equipment antitrust cases have, therefore, for almost four years been the subject of intensive national consideration by a large number of federal district judges. From a total of over 1,900 law suits with over 25,000 claims, there now remain in the courts approximately 645 law suits involving about 5,400 claims.[2] Eight trials have been commenced and five have gone to judgment.[3] Although the number of pending cases has diminished, the need continues for a national program to continue their processing to disposition by trial or settlement. As part of that program, the Co-ordinating Committee has recently recommended that wherever feasible and desirable all claims in eleven designated product lines be transferred for final pre-trial and trial to suggested transferee districts. In each of these product lines, extensive national discovery has been completed.

Two motions have been brought in this court, pursuant to 28 U.S.C. § 1404, which are in accord with these recommendations. One seeks an order to transfer cases in the circuit breaker and power switchgear assembly product lines to the Northern District of Illinois. As of November 15, 1965, there were pending in this district nine cases in the former product line and twenty-two in the latter.[4] The other motion seeks an order transferring cases in seven other product lines to various transferee courts, as follows: insulators (nine),[5] power transformers (four) and network transformers (one) to the Northern District of California; hydroelectric generators (two) to the Western District of Washington; power switching equipment (sixteen) to the Eastern District of Missouri; distribution transformers (four) to the Eastern District of Pennsylvania; and low voltage distribution equipment (nine) to the Western District of Missouri. As of November 15, 1965, there were thus seventy-six cases pending in this district in these nine product lines. The Co-ordinating Committee also recommended that two other product lines (condensers and steam turbine generators)

1. For a fuller discussion of the history of these cases and the inception and work of the Co-ordinating Committee, see Neal & Goldberg, The Electrical Equipment Antitrust Cases: Novel Judicial Administration, 50 A.B.A.J. 621 (1964).

2. These are the latest statistics furnished the individual district judges by the Co-ordinating Committee. Hearing of Nov. 15, 1965, exhibit D (hereinafter referred to as "Ex. D"), p. 3. Since these figures are as of October 7, 1965, the number of law suits and claims now pending is undoubtedly less.

3. Ohio Valley Elec. Corp. v. General Elec. Co., 244 F.Supp. 914 (S.D.N.Y.1965) (Feinberg, J.; judgment of $16,873,203); Philadelphia Elec. Co. v. General Elec. Co., C.A. No. 30015 (E.D.Pa.1964) (J. S. Lord, J.; judgment of $28,972,217.-25); Northwest Elec. Power Coop., Inc. v. Moloney Elec. Co., C.A. No. 13290-3 (W.D.Mo.1964) (Becker, C. J.; judgment of $2,065,743); City of Burlington, Vermont v. Westinghouse Elec. Corp., 246 F.Supp. 839 (D.D.C.1964) (Sirica, J.;

judgment of $504,000); Public Util. Dist. No. 1 v. General Elec. Co., C.A. No. 5271 (W.D.Wash.1964) (Boldt, J.; judgment of $1,275,000).

4. Hearing of Nov. 15, 1965, exhibit B (hereinafter referred to as "Ex. B"). All references to Ex. B are to the data thereon as brought up to date by the record of the Nov. 15 hearing. For purposes of these motions, a case is not regarded as pending if counsel at the hearing of Nov. 15 or earlier stated on the record that the case was settled as against all defendants even though the formal order of dismissal had not as yet been signed.

5. The figure in parentheses after each product line indicates the number of cases now pending in that line in this court. The figures come from exhibit A at the hearing of Nov. 15 (hereinafter referred to as "Ex. A"). All references to Ex. A are to the data thereon as brought up to date by the record of the Nov. 15 hearing.

be transferred from other districts to this court. Therefore, the present motions do not suggest transfer from this district of any cases in these product lines, but it is expected that in the coming weeks such cases will be transferred by judges in other districts into this court.[6] As of November 10, 1965, orders transferring sixty-five cases had been entered in the Southern District of California, the District of Columbia, the Western District of Kentucky, the Eastern and Western Districts of Missouri, the Northern District of Illinois, the Eastern District of Pennsylvania, and the Southern and Western Districts of Texas, coinciding with recommendations of the Co-ordinating Committee.[7]

There have been a number of hearings on the two motions under consideration. Both motions were originally brought on at the court's suggestion, but at one or more of the hearings various plaintiffs and defendants have either joined in the motions, affirmatively indicated that they have no objection to the proposed transfers, remained silent or made no appearance. Other defendants and a few plaintiffs have objected to some of the proposed transfers. There are at least twenty-eight plaintiffs or plaintiff groups and twenty defendants involved in these seventy-six cases. The positions of those who affirmatively object to the transfers are discussed below.

The section under which these two motions are brought is 28 U.S.C. § 1404 (a), which provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In considering the motions to transfer, there are some overall considerations that appear generally applicable to each case and to all product lines. Defendants are still involved in cases in many districts and do business in a national market. Thus, defendant I–T–E Circuit Breaker Company ("ITE"), as of October 7, 1965, still had pending against it some 365 cases involving about 1,090 claims originally brought in sixteen districts.[8] Many of the plaintiffs in the cases now under consideration are corporations whose primary operations are neither based in New York nor local in nature. There are obvious advantages to having the remaining cases in a particular product line centered in one locale before one judge. Final pre-trial and trial preparation can be done with a minimum of duplication of expense and effort before a court which has acquired, or will rapidly do so, detailed knowledge of all the problems raised in the litigation affecting that product line. Witnesses and parties with knowledge of the particular product line will not be required to undergo the demands of repetitive trials in various localities involving the same product. Consolidation of cases in the same product line for final pre-trial preparation (including local discovery) and for trial will be facilitated because all will be in the same court. Such consolidation is not at all unlikely since evidence of conspiracy and even of injury may well be similar in most, and perhaps all, of the remaining cases in any product line. In any event, concentration of cases in a product line will confine to one district the multitude of procedural and substantive problems that might otherwise be posed in various districts. Such concentration and consolidation should reduce the cost of trial preparation. Trial dates have either been fixed in the various proposed transferee districts for the respective product lines or will be set in the near future.[9] There is no substantial question raised as to whether the proposed transferee courts are prepared to handle the transferred cases expeditiously. Therefore, transfer of cases in accord-

---

6. A hearing in this court for selection of the next case or cases for trial in the condenser or steam turbine generator line has been fixed for January 5, 1966.

7. Hearing of Nov. 15, 1965, exhibit E.

8. Ex. D, p. 5, but see note 2 supra.

9. E.g., see note 6 supra.

ance with the recommended program will facilitate the speed with which they are tried. If each transferring court, and particularly this transferring court, had to try cases in each of the nine product lines affected by the transfers out, as well as the two product lines scheduled for trial here, it is obvious that in cases of this magnitude, trials in all the product lines could not be completed with the same convenience and speed. See Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 26, 80 S.Ct. 1470, 21 L.Ed. 2d 1540 (1960). These general considerations are persuasive reasons why the proposed transfers are for the convenience of parties and witnesses and in the interest of justice.

The few reported electrical equipment antitrust decisions dealing with this unique transfer problem have all allowed transfers and emphasized these considerations. Thus, in Kansas City Power & Light Co. v. I–T–E Circuit Breaker Co., 240 F.Supp. 121 (W.D.Mo.1965), Judge Becker transferred two power switchgear assembly cases from the Western District of Missouri to the Northern District of Illinois and justified the transfer on the grounds, *inter alia,* that the convenience of witnesses would be served by a central location for the trial with possible consolidation, that the convenience of parties would be served by reducing the cost of separate preparation of cases in the same product line in various districts and by accessibility of documents in defendants' national document depository located in Chicago, that the interest of justice would be served by an earlier trial in Chicago and by avoiding repetitive trials, that there did not appear to be any problem of court congestion in the transferee districts and that the cases were "national controversies between established corporations not local in interests, operations, or abilities." 240 F.Supp. at 123. These transfers were left undisturbed by the Eighth Circuit in I–T–E Circuit Breaker Co. v. Becker, 343 F.2d 361 (8th Cir. 1965), in which the court stated (343 F.2d at 364):

The considerations prompting the transfer and the realities on which they rest, as set out in respondent's order, provide in our opinion such a basis for viewing convenience of parties and witnesses, in the interest of justice, as being served, in respect to the disposition of petitioner's cases and their relation to the general problem, as on their face to entitle us to regard the situation as not involving judicial arbitrariness and abuse of discretion.

In I–T–E Circuit Breaker Co. v. Regan, 348 F.2d 403 (8th Cir. 1965), the same appellate court again dealt with an application to prevent transfer of a power switchgear assembly case to the Northern District of Illinois, this time from the Eastern District of Missouri. In dismissing a petition for a writ of mandamus, the court stated (348 F.2d at 405):

Whatever might be the limits of the questions entitled to consideration under § 1404(a) in a strictly single case in an individual federal court, having no relation to the administration or disposition of any other litigation pending in the federal judicial system, the situation here went beyond those bounds. The question of convenience of parties and witnesses under § 1404(a) is one which must be measured in terms of "the interest of justice" in relation to the situation which is involved and on the basis of proper judicial discretion exercised as to its whole.

We think that on the facts before it and on those of which it could properly take judicial notice, the District Court was entitled to find, as it did, that the convenience of witnesses, on the national issue of alleged conspiracy and its effect on prices charged by petitioner would be served by a central location for trial, together with the possibility of reducing the number of appear-

ances required by these witnesses; that the convenience of the parties would be served by reducing the cost of separate preparation of power switchgear assembly cases and by better accessibility of documents in the National Documents Depository in Chicago for use in preparation and trial of the case; and that the interest of justice would be served by the apparently planned early trial in Chicago and concentrating many of the power switchgear assembly cases in one jurisdiction and avoiding to the extent possible repetitive trials in many jurisdictions.

Similarly, the Third Circuit has denied a petition for mandamus against Judge Lord for transferring all power switchgear assembly cases to the Northern District of Illinois. I–T–E Circuit Breaker Co. v. City of Philadelphia, No. § 15,300 (3d Cir.), cert. denied, 381 U.S. 936, 85 S.Ct. 1768, 14 L.Ed.2d 701 (1965).

Against this background of general considerations and reported decisions to date the objections of specific parties will be considered in detail. Before doing so, it should be noted that no one has specifically raised the question of the propriety of a transfer under 28 U.S.C. § 1404(a) on the court's own motion. Of course, to the extent that any party has joined in the motions to transfer, the motion may be regarded as though that party had originally moved.[10] The point was discussed in I–T–E Circuit Breaker Co. v. Becker, 343 F.2d 361, 363 (8th Cir. 1965), and the court there appeared to approve a motion *sua sponte* although its observations were dictum.[11] In I–T–E Circuit Breaker Co. v. City of Philadelphia, supra, the transfers were on the district court's motion.[12] It is doubtful that the question is so basic as to require discussion in the absence of specific objection on this ground. But clearly the transfers ordered herein imply at least a recognition of the power to do so and I accept that proposition.

The principal objecting defendant is ITE, the same company involved in the three cases cited immediately above. It objects to transfer of cases in the power

10. See note 26 infra and accompanying text.

11. "It is contended, however, as a second basis for seeking a writ that respondent's action of transfer was beyond the scope of his statutory power in that the transfer was made, 'in essence, upon the Court's own motion, and Section 1404(a) does not permit a transfer under such circumstances.' No reported case has been found in which it has been specifically declared that subsection (a) authorizes a court to transfer a case to another district on its own motion. It can be argued that Swindell-Dressler Corporation v. Dumbauld, 308 F.2d 267 (3 C.A. 1962) contains an implied recognition of such authority, in that there the order so made by the district court was ordered vacated solely upon the ground that it had been entered without any notice or opportunity to the parties to be heard, and there is no suggestion or intimation in the opinion of any question of authority existing under Section 1404 (a) because of the court's having made the transfer on its own motion. And it may be added that the District Court for the Eastern District of Pennsylvania has since respondent's order here made transfer of some of the cases pending against petitioner in that district to the Northern District of Illinois upon its own motion.

"It will be noted that subsection (a) of § 1404 is without any limiting language as to the power of the district court to transfer a civil action to another district such as is contained in subsection (b) ['[u]pon motion, consent or stipulation of all parties']. Subsection (a) is general in its provisions: 'For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought'. Its most impressive phrase would seem to be 'in the interest of justice'.

"But there is no need for us to discuss the question further, since the situation here is not one in which respondent's action rested on his own motion."

12. The point was raised by ITE in its petition for mandamus. Petition for Either a Rule to Show Cause or a Writ of Mandamus, p. 13, I-T-E Circuit Breaker Co. v. City of Philadelphia, No. 15,300 (3d Cir. 1965). The Third Circuit, in denying the petition, wrote no opinion.

switchgear assembly, power switching equipment, insulator and low voltage distribution equipment product lines on the grounds that such transfer is not convenient for the parties and witnesses, the record does not reflect sufficient evidence or facts to justify such transfer and the consideration of extra-judicial information is an abuse of due process.[13] ITE is involved in all of the fifty-six cases in these product lines pending in this district. Of these, thirty-one appear to be pending here against ITE alone,[14] since the other defendants in these suits have settled with the respective plaintiffs.

With regard to transfer of the power switchgear assembly cases to the Northern District of Illinois, it appears that, according to affidavits filed by ITE, over twenty cases against ITE in this product line had, by September 3, 1965, already been transferred to Chicago from other districts to join five cases originally brought against ITE in the Northern District of Illinois.[15] Although it is most probable that since then additional cases in this product line have been ordered transferred into that district, it is clear that with this substantial number of cases already there, the general considerations supporting transfer referred to above are most applicable. With regard to the circuit breaker product line, ITE would consent to transfer to the Southern District of California rather than to the Northern District of Illinois. A number of orders have already been entered transferring circuit breaker cases to the latter district rather than to

the former. ITE is, of course, aware of these orders since it is a defendant in most of the cases; in at least one court, according to the record before me, it unsuccessfully made the same suggestion it presses here.[16] After full consideration, I find that the advantages already discussed of transferring to the Northern District of Illinois outweigh ITE's arguments as to convenience. With regard to the other lines affecting ITE, I have also considered its position and do not find it persuasive.

General Electric Company ("GE") "is in favor of the general plan for transfer of cases" but has objected in part to the proposed transfers on grounds involving national considerations.[17] GE does not oppose the transfer of power transformer and hydroelectric generator cases; it does oppose transfer of insulator cases to the particular district contemplated and any transfer at all of power switching equipment, distribution transformer, low voltage distribution equipment and network transformer cases. In the latter four product lines, as of November 15, 1965, GE was still involved in eight cases in this district.[18] GE's position is joined in by Allis-Chalmers Manufacturing Company ("Allis"), which still has pending against it in this district six cases in the same four product lines.[19] Thus, these defendants accept the idea of national distribution of these cases by transfers. They suggest transferring only seven product lines instead of eleven[20] on the theory that trials of cases in these product lines would bring about settlement in the remaining prod-

13. Transcript of hearing (hereinafter referred to as "Tr.") September 2, 1965, pp. 4–8; Tr. October 29, 1965, pp. 13–14.

14. Exs. A and B.

15. Affidavit of Harry L. Buck, sworn to Sept. 3, 1965.

16. ITE has submitted an affidavit here, incorporating an affidavit previously presented to the District Court for the Western District of Missouri, which sought, *inter alia*, transfer of circuit breaker cases to California rather than to Illinois. Affidavit of Harry L. Buck, sworn to Sept. 3, 1965, attached ex. 1, p.

3. These cases were subsequently ordered transferred to Illinois. Ex. E, pp. 6–7. Other orders of transfer also appear on Ex. E.

17. Memorandum in Partial Opposition, attached memorandum, p. 1.

18. Ex. A.

19. Ibid.

20. As indicated above, two of these eleven product lines (and of the seven suggested by GE) are steam turbine generators and condensers, and these product lines are not affected by the two motions here,

uct lines. While this analysis is detailed and is a reasonable approach to the problem of transfers, I do not think that the suggested alternative plan is as desirable as the more extensive transfers proposed by the motions under consideration. The additional four product lines involve thirty pending cases in this court and substantially more nationally.[21] Processing these cases now will advance them toward trial without waiting for the outcome of the speculative prediction that all of the cases in these lines will eventually be settled. With regard to the suggestion that insulator cases should be transferred to the Eastern District of Pennsylvania rather than to the Northern District of California, GE and Allis argue that from defendants' standpoint the former is a more convenient forum since most defendants in this product line are located in the northeastern part of the country. There are nine insulator cases pending in this court, and GE is a remaining defendant in only one and Allis a defendant in none.[22] Passing for the moment the question whether GE and Allis can properly object to transfer of cases to which they are not parties, it should be noted that the principal defendant in these cases (ITE) has suggested California as a proposed transferee court in another product line,[23] and many of the plaintiffs are not located in the northeastern section of the country; e. g., Alabama Power Company, Texas Electric Service Company, Arkansas Power & Light Company, and San Manuel Copper Corporation. Taking all factors into consideration, the case for transfer, as recommended, in the lines to which GE and Allis object is stronger than the case against.

Some other defendants have also objected to transfer. Westinghouse Electrict Corporation ("Westinghouse"), which takes no position on transfer of the power switchgear assembly, circuit breaker and power transformer cases, does oppose transfer of power switching equipment, distribution transformer, low voltage distribution equipment and network transformer cases,[24] which account for eight of the cases in which it is still involved in this court; [25] Kuhlman Electric Company objects to transfer of two cases in the distribution transformer product line; Cutler-Hammer, Inc. objects to transfer of four low voltage distribution equipment cases; and Wagner Electric Corporation objects to transfer of eight power transformer, distribution transformer and network transformer cases. However, none of these defendants raises any points not already dealt with, except for the argument that certain cases should not be transferred because settlement is imminent. As to this, the cases have been in this court for several years. The motion affecting these products was noticed over six weeks ago. There will, of course, still be a brief opportunity to settle these cases in this court until the orders of transfer are entered after proper notice following the filing of this opinion. Under these circumstances, further delay by this court in the progress of these cases toward trial is not justifiable. Obviously, the parties will still have an opportunity in the transferee court to settle their disputes at any time up to trial. No defendant has questioned whether any cases to be transferred "might have been brought" in the proposed transferee district.

Only a few plaintiffs have objected to transfer; most plaintiffs have either affirmatively joined in the motion [26] or indicated that they do not object. The Port of New York Authority originally opposed transfer, but it is now left with

since the suggested transferee district is this court.

21. Ex. D, pp. 8–9, but see note 2 supra.

22. San Manuel Copper Corp. v. General Elec. Co., 62 Civ. 722. Ex. A.

23. See note 16 supra.

24. Tr. Oct. 20, 1965, p. 7; Tr. Oct. 29, 1965, pp. 29–30.

25. Ex. A.

26. That a plaintiff may move under 28 U.S.C. § 1404(a) for a transfer, see 1 Moore, Federal Practice ¶ 0.145 [4.-2], at 1768 n. 8 (2d ed. 1964).

only two cases against ITE and does not object to transfer.[27] The State of New York and the New York State Thruway Authority originally opposed transfer on the ground that it would be unduly burdensome and expensive for a public authority to retain local counsel to try its case elsewere.[28] However, here too the basis for opposition seems actually to be that transfer of the four cases in question should be deferred for a while until settlements are reached with other defendants and ITE is the only remaining defendant.[29] As indicated above, possibility of settlement does not seem a sufficiently valid justification at this point for further delaying the national processing of these cases. A few plaintiffs do not appear to have taken the trouble to state a position on the motion.[30] As to one hydroelectric generator case, plaintiffs argue, *inter alia*, that proof will involve testimony as to activities in the steam turbine product line.[31] Consideration of the affidavit submitted by these plaintiffs indicates that their position may well be correct. Therefore, since the steam turbine product line is being kept in this district, a transfer of this hydroelectric case is not justified at this time, and the motion in that respect will be denied. There are a few cases which had been placed in a "backburner" status some time ago and in which discovery has accordingly been stayed. Plaintiffs in these cases do not object to the transfer but suggest that the stay be continued. As to these, the stay is lifted but the parties are not required to take any steps under national or local orders already in existence for a period of at least thirty days after the physical transfer of the cases to the transferee court has been accomplished, unless the transferee court upon the application of a party orders to the contrary.

Accordingly, after careful consideration of the record and the arguments of the parties, and the proceedings had to date, I find that, with the exception indicated above, the burden required to justify transfers has been met and that in every case to which these motions now apply [32] the convenience of the parties and witnesses and the interest of justice will be served by transfer. Therefore, the motions to transfer are granted. Settle separate orders for each product line on notice in accordance with this opinion.

27. Tr. Nov. 15, 1965, pp. 25–26. The product line involved is low voltage distribution equipment. This plaintiff's other cases are now settled, subject to a ten-day waiting period.

28. Tr. Sept. 2, 1965, pp. 25–26.

29. Tr. Nov. 15, 1965, pp. 39–40.

30. E.g., San Manuel Copper Corporation, plaintiff in four cases.

31. Alabama Power Co. v. Allis-Chalmers Co., 62 Civ. 511.

32. These are the cases listed on Exs. A and B. as brought up to date by the record of the Nov. 15, 1965 hearing.