**ST. REGIS MOHAWK TRIBE, Plaintiff,**

v.

**STATE OF NEW YORK, and Mario M. Cuomo, Governor of the State of New York, Defendants.**

**No. 90 Civ. 5513 (KMW).**

United States District Court, S.D. New York.

Sept. 23, 1991.

John Rainey, Dorsey & Whitney, New York City, for plaintiff.

Judith Ratner, Robert Abrams, Atty. Gen., New York City, for defendants.

## OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Defendants move to dismiss the case for improper venue pursuant to F.R.Civ.P. 12(b)(3) or, alternatively, for a transfer pursuant to 28 U.S.C. § 1404(a).

### Background

This is an action brought pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* ("IGRA" or "the Act"). The Act establishes a comprehensive scheme for the regulation of gaming on Indian lands. It is a response to congressional concerns over, on the one hand, the increasing popularity among Indian tribes of gaming as a source of revenue and, on the other, the lack of clear standards for the conduct of such activities.

The Act classifies gaming into three categories and establishes standards for the regulation of each. Class I games consist of "social games [played] solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of, or in connection with, tribal ceremonies or celebrations." *Id.* at § 2703(6). Class II games include bingo, related activities, and certain card games. *Id.* at § 2703(7)(A). Class III games are all those that do not fit into either of the two other groupings. Class III games are lawful on Indian lands if the activities are authorized by a tribal ordinance or resolution approved by the chairman of the National Indian Gaming commission; if they are conducted within a state "that permits such gaming for any purpose by any person, organization or entity," *id.* at § 2710(d)(1)(A)–(B); and if they are played in conformance with a tribal-state compact entered into between the tribe and the state. *Id.* at § 2710(d)(1)(C).

It is this last requirement that lies at the heart of this suit. The IGRA states that upon request of an Indian tribe wishing to conduct Class III gaming on its lands, the State shall negotiate in good faith with the tribe to enter into a tribal-state compact governing the gaming activities. *Id.* at § 2710(d)(3)(A). In this case, the Tribe requested that the state enter into negotiations to conclude a Class III gaming compact in August 1989 (at the latest). The negotiations proceeded (with a number of stops and starts) until August 22, 1990. Believing the negotiations to be at an impasse, the Tribe filed suit the next day.

### Discussion

■ At a pre-trial conference held to discuss motions that both parties wished to file, including a motion for a change of venue, the court expressed its view that if this case could be decided on summary judgment, it should remain in this district. The court stated that if, however, there exist disputed factual issues that would require a court to hear the testimony of live witnesses, the court would be inclined to transfer the case to the Northern District of New York for the convenience of the witnesses.[1]

---

**1.** The state argues at length in its papers that venue is improper in this district, under 28 U.S.C. § 1391(b), and that the court should dismiss the action on this ground. As previously stated at the pre-trial conference, the court finds that venue is appropriate in the Southern District of New York (subject to a transfer pursuant to § 1404(a)) because the defendants reside in this judicial district. The weight of authority is to the effect that a state official may have more

The state argues that two sets of factual disputes preclude resolution by summary judgment. The first set of disputes involves the question of whether the Tribe has satisfied the jurisdictional prerequisite of the statute. A tribe may bring an action under IGRA only after 180 days have run from the time the Tribe requested that the state negotiate a Tribal–State compact under the Act. 25 U.S.C. § 2710(d)(7)(B)(i). The state has conceded that it received notice of the Tribe's request to negotiate a compact more than 180 days before the Tribe initiated this action. *See* Batson Aff. at ¶ 3. The state argues, however, that the Tribe must be in a position to negotiate before a request to negotiate triggers the running of the 180 day period. "Otherwise, the 180 days would be meaningless as a period of negotiation and would simply be an exercise in counting days." Def.'s Surreply to Plaintiff's 3(g) Statement at 4. The state contends that the Tribe was not prepared to engage in serious negotiations prior to May 1, 1990, when present counsel commenced negotiating on behalf of the Tribe, and that the 180 day period had thus not expired when the Tribe commenced its suit. A court must first answer the legal question whether IGRA requires the Tribe actually to be in a position to negotiate, and not merely to request the state to enter into negotiations, before the 180 day period begins running. If a court reads IGRA to contain such a requirement, a court would proceed to the disputed fact issues concerning when the Tribe was *prepared to negotiate.*

The second set of factual disputes that precludes summary judgment, according to the state, relates to the negotiations themselves. The Tribe claims—and the state disputes—that the state has violated the law by failing to negotiate in good faith. The compact negotiations between the state and the Tribe have apparently foundered because of disagreements over three issues: (1) which type of games the com-pact will allow; (2) whether there must be legislative approval of a compact; and (3) matters relating to law enforcement and public safety on the reservation. The state argues that it has negotiated in good faith with respect to these issues, and that merely taking certain negotiating positions cannot, per se, amount to bad faith. Moreover, the state contends, because these positions all deal with permissible subjects of negotiation under the Act, the court must look beyond these areas, to the entire history and course of negotiations, in order to make a determination of whether the state has negotiated in good faith. The state argues that this type of determination will necessarily require the court to weigh the testimony of witnesses. Alleging that the minutes of the negotiating sessions are incomplete, it argues that it is "entitled to a hearing concerning what bargaining positions were actually taken at the negotiations, and the reasons why, in order to establish their good faith." Def.Mem. of Law at 24. The state contends that such a hearing will entail the testimony of a large number of state employees whose convenience mandates transfer of this action to the Northern District of New York.

The Tribe argues that there are no disputed facts material to the resolution of a summary judgment motion, and that this court may decide the good faith of the state's negotiating positions as a matter of law. The Tribe's arguments begin from the premise that the only allowable condition precedent to negotiation under the IGRA is a request by the Tribe that the state enter into negotiations. *See Mashantucket Pequot Tribe v. Connecticut,* 913 F.2d 1024, 1028 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1620, 113 L.Ed.2d 717 (1991). According to this argument, by taking certain negotiating positions, and refusing to conclude a compact until it was "satisfied" regarding these issues, the state has established unlawful conditions precedent to negotiations.

than one residence for venue purposes when she conducts a significant amount of government business in both locations. *See Florida Nursing Home Ass'n v. Page,* 616 F.2d 1355, 1360 (5th Cir.1980), *rev'd. on other grounds,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *South Og-den CVS Store v. Ambach,* 493 F.Supp. 374, 377–78 (S.D.N.Y.1980); *Buffalo Teachers Federation, Inc. v. Helsby,* 426 F.Supp. 828 (S.D.N.Y.1976); 15 C. Wright & A. Miller, *Federal Practice and Procedure* § 3805, at 40 (2d ed. 1986).

At least one issue, however, law enforcement under the compact, will almost certainly require the court to weigh the testimony of live witnesses. For example, the state argues that given the degree of violence on the Reservation prompted, at least in part, by gambling, it has the right to insist that the Tribe negotiate an agreement that addresses the law enforcement problems posed by the introduction of casino gambling on the Reservation. The statute supports this view. It sets forth a list of factors a court may take into account in determining whether a state has negotiated in good faith. This list includes such factors as the public interest, public safety, and criminality. 25 U.S.C. § 2710(d)(7)(B)(iii)(I). The state's law enforcement concerns, if sincere, fall well within the statutory rubric of public safety.

The Tribe maintains, however, that these concerns are not sincere and that the state's real concern is not public safety, but the desire to use the compact negotiations to abdicate its own law enforcement obligations. The Tribe also contends that the state is attempting to extract non-gaming related concessions from the Tribe, including having the Tribe establish its own, indigenous police force. The Tribe also points out that the draft compact includes law enforcement provisions, that the state has already agreed to one of those, and suggests that that provision should suffice.

The state disputes the Tribe's characterization of its concerns, and also disputes that it has required plaintiff to establish an indigenous police force. Instead, the state contends that any discussion of the issue of a tribal police force has been in response to indications of interest in such a project by the Tribe. The state also disagrees with the Tribe's view that sections 7.2 and 7.3 of the draft compacts are, or were intended to be, comprehensive solutions to the public safety concerns posed by the prospect of casino gambling on the St. Regis Reservation. *Compare* Plaintiff's Reply to Defendants' Proposed 3(g) Response at 30–32 *with* Defendants' Surreply to Plaintiff's Reply to Defendant's Proposed Rule 3(g) Response at 10 *and* Dullea Aff. at ¶¶ 21–25.

These law enforcement issues preclude summary judgment in this case in at least two ways. First, there can be no denying the fact that recent violence on the reservation suggests the possibility of future violence once the Tribe and the state enter into a compact and gambling begins. It is reasonable for the state to be cautious in this area. Whether this apparent caution is a pretext for refusing to conclude a compact cannot be decided without live testimony. Second, unlike other issues as to which the parties have failed to agree, this is an issue as to which the parties dispute what negotiating position each side has taken. Although the Tribe claims that the court may assess the state's good faith by looking only at the legality of the negotiating position the state has taken, resolution of this issue requires testimony where the parties disagree over what that negotiating position was.

The court recognizes that nearly every other case decided under IGRA has been decided on summary judgment. Yet, in each of those cases the court was able to draw on uncontested, material facts in reaching its decision. *See, e.g., Mashantucket Pequot Tribe v. Connecticut,* 913 F.2d at 1028 (cross motions for summary judgment); *Oneida Tribe of Indians v. Wisconsin,* 742 F.Supp. 1033 (W.D.Wis. 1990) (stipulated facts); *Lac du Flambeau Band of Chippewa Indians v. Wisconsin,* 770 F.Supp. 480 (W.D.Wis.1991) (defendants conceded relevant facts). The court also recognizes that further delay in this case works to the detriment of the Tribe, and that IGRA aims to provide Indian tribes with a way to prevent foot-dragging on the part of states reluctant to permit casino gambling within their borders. But a more fully developed factual record is required to determine whether the state has taken a negotiating position with respect to its law enforcement concerns that amounts to an unlawful condition precedent to the conclusion of a compact, and whether the state's conduct as to other matters in the negotiations amounts to impermissible foot-dragging or legitimate, good faith negotiating.

■ Finally, while plaintiff's choice of forum is entitled to some weight in any

calculation under § 1404(a), the emphasis a court places on this factor diminishes where, as here, the facts giving rise to the litigation bear little material connection to the chosen forum. *Nieves v. American Airlines,* 700 F.Supp. 769, 773 (S.D.N.Y.1988). The only connections with the Southern District present in this case are that both plaintiff's counsel and the principal office of the Racing and Wagering Board are located in New York City, and the fact that one negotiating session was held here. The center of gravity of this case clearly lies in the Northern District, leading the court to place less importance on plaintiff's choice of forum than it otherwise would.

The court thus finds that the convenience of the witnesses and the interests of justice warrant a transfer of this case to the Northern District of New York.

### Conclusion

For the reasons set forth above, defendants' motion to transfer this case pursuant to 28 U.S.C. § 1404(a) is granted. Defendants' motion to dismiss is denied. The Clerk of the Court is directed to transfer this case to the Northern District of New York.

SO ORDERED.