Ezekiel O. **COKER**, Plaintiff,

v.

**BANK OF AMERICA**, Defendant

No. 96 Civ. 9698 (JFK)(AJP).

United States District Court,
S.D. New York.

Nov. 14, 1997.

Joseph Rotimi Famuyide, Hempstead, NY, for Plaintiff.

Jantra Van Roy, Seicher Ellman & Krause, New York City, for Defendant.

## ORDER

KEENAN, District Judge.

This is a diversity of citizenship case involving an alleged wrongful payment of a check by Defendant Bank of America. The Court referred Defendant's motion for transfer pursuant to 28 U.S.C. § 1404, partial summary judgment, and/or to dismiss under Federal Rule of Civil Procedure 12(b)(1) to Magistrate Judge Andrew J. Peck. In a Report and Recommendation ("Report") forwarded to the Court on August 18, 1997, Magistrate Judge Peck recommended that

the Court: (1) grant Defendant's motion for partial summary judgment; (2) deny Defendant's motion to dismiss for lack of subject matter jurisdiction; and (3) grant Defendant's motion to transfer the case to the District of New Mexico pursuant to 28 U.S.C. § 1404.

No objections were filed with respect to the Report. The Court adopts the Report and Recommendation in its entirety.

The Court orders that judgment be entered in favor of Defendant reflecting the above terms. The Clerk of the Court is ordered to transfer this case to the District of New Mexico and remove it from the active docket.

**SO ORDERED.**

PECK, United States Magistrate Judge.

To the Honorable John F. Keenan, United States District Judge:

Plaintiff Ezekiel O. Coker alleges that the New Mexico branch of defendant Bank of America National Trust & Savings Association ["BANTSA" or the "Bank"] wrongfully paid a stolen and forged $17,500 check drawn on his account over his "post no debit" instruction, and also wrongfully closed his account with the Bank. Coker has turned what appears to be a $17,500 claim that should be heard in state court in New Mexico into a federal complaint, filed in the Southern District of New York on the basis of diversity jurisdiction, seeking over $100,000 in damages.

BANTSA has moved for partial summary judgment and to dismiss or transfer. For the reasons set forth below, the Court recommends that BANTSA's (1) motion for partial summary judgment with respect to the account closing claim (the third cause of action) be granted, (2) motion to dismiss the remainder of the complaint for failure to satisfy the amount in controversy requirement be denied, and (3) motion to transfer the case to the District of New Mexico be granted.

### FACTS

#### Coker's Bank Account

In May 1982, while Coker was a student in the United States, he opened an account with Albuquerque Federal Savings and Loan in Las Cruces, New Mexico. (Amended Verified Complaint ["Cplt."], First Count, ¶ VI.) Thereafter, BANTSA took over that bank's assets and liabilities, informed Coker of the takeover, and assigned Coker account number 20291–02475. (Id. I VII; Answer ¶ 6.) Coker left the account in "good standing" when he returned to Nigeria in 1986. (Cplt., First Count, ¶¶ I, VI.)

#### Coker's Check

It is undisputed that on July 28, 1994, BANTSA paid a $17,500 check dated July 4, 1994 from Coker's account. (Cplt., First Count, ¶ XII; Answer ¶ 7; Coker Aff. ¶ 4.) The parties dispute the propriety of BANTSA's action.

Coker alleges that on January 11, 1994, his residence in Nigeria was burgled and his checkbook was stolen. (Cplt., First Count, ¶ IX.) Coker alleges that he called BANTSA two days later to place a "'stop payment order'" on the account. (Id. ¶ X; Coker Aff. ¶ 5.) Coker also alleges that he faxed and mailed a letter confirming the "'post no debits'" instruction. (Cplt., First Count, ¶¶ X, XI.) Coker further maintains that on June 16, 1994, 3 he telephoned a BANTSA representative and re-confirmed the hold on the account. (Id. ¶ XI; Coker Aff. ¶ 5.)

BANTSA claims to have no record of any such fax, letter, or telephone conversation. (Famuyide Aff. Ex. C.) BANTSA claims that "[s]ince no stop payment order was received prior to July 28, 1994, the date [Coker's] check was processed, there was no reason to stop the payment of that check." (Id.)

#### BANTSA Closes Coker's Account

BANTSA notified Coker by letter dated September 22, 1995 that it was closing his account. (Affidavit of Lawanda Strong, BANTSA Customer Assistance Officer, ¶ 6 & Ex. C.) BANTSA closed the account on October 10, 1995. (See BANTSA 3(g) Statement, ¶ 4; Strong Aff. ¶ 4; Cplt., Third Count, ¶ II.) These facts are undisputed; the propriety of the account closing is disputed.

BANTSA points to its "Disclosure and Account Agreement" booklet, "effective June 21, 1993," which states:

## INTRODUCTION

Welcome to Bank of America, and thank you for opening an account with us.

When you open a personal deposit account with us, you agree to the terms and conditions described in this publication. The agreement you make with us, and the rights and obligations we both have, are governed by and interpreted according to New Mexico and federal law.

\* \* \* \* \* \*

**CHANGE IN TERMS** We may change the terms and conditions discussed in this publication at any time. If you maintain your checking or savings account or renew your time deposit after the effective date of the change, you indicate your agreement to the change.

\* \* \* \* \* \*

**CLOSING AN ACCOUNT** You or we may generally close your checking, money market, or savings account any time without advance notice.

(Strong Aff. Ex. B at pp. 1, 3.) Coker, however, maintains that he never received a copy of that agreement. (Coker Aff. ¶ 11.)

### Coker's Damage Claims

In the "First Count" of his complaint, Coker requests $100,000 in "damages[ ]and punitive damages" to compensate him for "financial loss, loss of use of his money, loss of profit, hardship and inconvenience" from BANTSA's failure to stop payment on the stolen $17,500 check. (Cplt., First Count, ¶¶ IX, XII, XIII, XVIII.) Coker maintains that BANTSA was negligent and reckless in failing to honor Coker's post no debit order, and that BANTSA also acted "fraudulently, deceitfully, oppressively, maliciously and outrageously towards" Coker, thus "intentionally causing or recklessly disregard[ing] the probability of causing emotional distress to [Coker]." (Id. ¶¶ XIV–XVII.)

Coker's "Second Count" requests $20,000 to compensate him for the "attorney's fees, traveling expenses, huge telephone expenses, mailing expenses, court fees" and "untold hardship and inconvenience" resulting from BANTSA's alleged negligence and fraudulent conduct. (Cplt., Second Count, ¶¶ II, III.)

Coker's "Third Count" alleges that BANTSA "for no just cause unilaterally closed" his account, causing him damages of $50,000 from the lost "future opportunity to finance his children [sic] education in the United States through the subject account," and from the lost "opportunity to earn interest on the subject account." (Cplt., Third Count, ¶¶ II, III, IV, VI.) Coker further contends that this damage is irreparable because he is not able to open a replacement U.S. bank account, since he is presently domiciled in Nigeria. (Id.)

## ANALYSIS

### I. BANTSA'S PARTIAL SUMMARY JUDGMENT MOTION SHOULD BE GRANTED

#### A. Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir.1991); Hernandez v. New York City Law Dep't Corp. Counsel, 94 Civ. 9042, 1997 WL 27047 at \*6 (S.D.N.Y. Jan.23, 1997) (Peck, M.J.); Burger v. Litton Indus., Inc., 91 Civ. 0918, 1996 WL 421449 at \*7 (S.D.N.Y. April 25, 1996) (Peck, M.J.), report & rec. adopted by 1996 WL 609421 (S.D.N.Y. Oct.22, 1996). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, here, BANTSA. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 36 (2d Cir.1994); Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir.1994); Hernandez v. New York City Law Dep't Corp. Counsel,

1997 WL 27047 at *6; *Burger v. Litton,* 1996 WL 421449 at *7.

However, if the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the "moving party is 'entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *accord, e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 567 n. 3, 112 S.Ct. 2130, 2140 n. 3, 119 L.Ed.2d 351 (1992); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 884–85, 110 S.Ct. 3177, 3186–87, 111 L.Ed.2d 695 (1990).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *see also Chambers v. TRM,* 43 F.3d at 36; *Gallo v. Prudential,* 22 F.3d at 1223; *Hernandez v. New York City Law Dep't Corp. Counsel,* 1997 WL 27047 at *6. The Court draws all inferences in favor of the nonmoving party—here, Coker—only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Hernandez v. New York City Law Dep't Corp. Counsel,* 1997 WL 27047 at *6; *Burger v. Litton,* 1996 WL 421449 at *7. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM,* 43 F.3d at 37; *see also, e.g., Hernandez v. New York City Law Dep't Corp. Counsel,* 1997 WL 27047 at *6.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine the existence of any disputed issues of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Ruiz v. Selsky,* 96 Civ.2003, 1997 WL 137448 at *3 (S.D.N.Y. March 24, 1997) (Peck, M.J.). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citations omitted); *see also, e.g., Knight,* 804 F.2d at 11–12; *Shaw v. City of New York,* 95 Civ. 9325, 1997 WL 187352 at *2 (S.D.N.Y. April 15, 1997) (Peck, M.J.); *Ruiz v. Selsky,* 1997 WL 137448 at *3.

## B. *Application of the Summary Judgment Standard*

■ BANTSA has moved for partial summary judgment only as to Coker's third cause of action, which seeks damages for BANTSA's allegedly improper closing of his account. BANTSA relies on a June 21, 1993 "Disclosure and Account Agreement" booklet that allows it to close any account at "any time without advance notice." (Strong Aff. Ex. B at p. 3.) Coker responds that he did not receive notice of this booklet. (Coker Aff. ¶ 11.)

If a prior agreement restricted BANTSA's right to unilaterally close Coker's account, there would be a material issue of fact as to whether Coker was informed of and agreed to the new rules contained in the booklet. However, the June 1993 Disclosure and Account Agreement booklet actually is irrelevant to decision of the motion. Coker has pointed to no promise by BANTSA (or its predecessor) not to close his account, nor any legal requirement that the parties' banking relationship continue indefinitely in the absence of a contractual termination provision. *See, e.g., Hartbarger v. Frank Paxton Co.,* 115 N.M. 665, 857 P.2d 776, 779 (1993) (employment contracts for an indefinite period are terminable at will), *cert. denied,* 510 U.S. 1118, 114 S.Ct. 1068, 127 L.Ed.2d 387 (1994); *Southwest Distrib. Co. v. Olympia Brewing Co.,* 90 N.M. 502, 565 P.2d 1019, 1024 (1977)

("In the instant case, there was no evidence of a termination provision [in the distribution agreement].... [I]t seems clear that the agreement was terminable at will by either party.... The termination may have been abrupt but [plaintiff] has no legal remedy because it had no right to demand a continuation of the relationship."); *Stieber v. Journal Publ'g Co.*, 120 N.M. 270, 901 P.2d 201, 203 (Ct.App.1995) (employment contracts for an indefinite period are terminable at will), *cert. denied*, 120 N.M. 68, 898 P.2d 120 (1995); *McCasland v. Prather*, 92 N.M. 192, 585 P.2d 336, 341 (Ct.App.1978) (contract without duration "is terminable at will upon reasonable notification"); *Robert Porter & Sons, Inc. v. National Distillers Products Co.*, 324 F.2d 202, 205 (10th Cir.1963) (under New Mexico law, contract without duration "could be terminated at will"). The ultimate burden on the motion is on Coker to present evidence that his account could not be closed by BANTSA. Coker simply has not done so. BANTSA therefore is entitled to summary judgment dismissing Coker's account closing third cause of action.

## II. THE COMPLAINT SATISFIES THE AMOUNT IN CONTROVERSY REQUIREMENT FOR DIVERSITY JURISDICTION

■ For there to be diversity jurisdiction, the parties must be diverse (which is not contested here), and the complaint also must meet the amount in controversy requirement of 28 U.S.C. § 1332(a), which was "$50, 000, exclusive of interest and costs," at the time Coker brought his complaint.[1]

BANTSA contends that "[s]tripped of its third claim, the Amended [Verified] Complaint consists of nothing more than a $17,500 claim" for an allegedly wrongly paid check. (BANTSA Br. at 4.)

Coker's "First Count" claims damages of $100,000, including punitive damages, for BANTSA's alleged negligent, reckless and fraudulent payment of the $17,500 check. (Cplt., First Count, ¶¶ XVII, XVIII.)[2] Coker's damage claim includes, *inter alia*, the $17,500 check and "punitive damages of three times the subject amount [$17,500] for reckless, fraudulent and oppressive conduct on the part of the Bank." (Coker Br. at 4.) Because the Court finds that the claim for the $17,500 check plus punitive damages satisfies the amount in controversy requirement, the Court need not examine any other claimed elements of damages. *See, e.g., A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir.1991) ("request for punitive damages ... might provide a basis for satisfaction of the jurisdictional amount"); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3702 at 44 ("punitive damages, if permitted under the governing law, can be included in determining whether the amount in controversy requirement has been met."); 1 Michael C. Silberberg, *Civil Practice in the Southern District of New York* § 9.19 at 9–40 ("The court may consider bona fide claims for punitive damages in determining the requisite amount in controversy.") (citing cases).

The Supreme Court has established the "legal certainty" standard to govern motion to dismiss for failure to satisfy the amount in controversy requirement:

1. The new statutory threshold of $75,000 became effective on January 17, 1997. This action was filed in December 26, 1996.

2. Coker's "Second Count" claims damages of $20,000 for "attorney's fees, traveling expenses, huge telephone expenses, mailing expenses, [and] court fees." (Cplt., Second Count, ¶¶ II, III.) Because the First Count meets the amount in controversy requirement, the Court finds it unnecessary to address the question of whether the damages sought in the Second Count would count toward satisfying the amount in controversy requirement—or indeed whether the Second Count states a viable claim distinct from the first cause of action. The Court notes, however, that

costs are excluded from the calculation by the explicit terms of 28 U.S.C. § 1332(a). ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000 [now $75,000], *exclusive of interest and costs* ... ") 28 U.S.C. § 1332(a) (emphasis added). Attorney's fees could not be included in the calculation here either, because they are not recoverable in this case. *See, e.g., Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) ("absent statute or enforceable contract, litigants pay their own attorneys' fees").

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.* The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction.... But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed ... and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."

*St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (emphasis added & footnotes omitted); *see also, e.g., Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982); *Reddy v. Barclays Bank of New York,* 773 F.Supp. 655, 657 (S.D.N.Y. 1991); *Posner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 469 F.Supp. 972, 986 (S.D.N.Y.1979); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3702.

■ Under New Mexico law, there must be some evidence of a culpable mental state in order to award punitive damages; "the mere breach of a contract does not imply any basis for punitive damages without evidence of such a culpable mental state or other form of overreaching, malicious, or wanton conduct." *Construction Contracting & Mgmt., Inc. v. McConnell,* 112 N.M. 371, 815 P.2d 1161, 1165 (1991); *accord, e.g., Paiz v. State Farm Fire & Cas. Co.,* 118 N.M. 203, 880 P.2d 300, 307 (1994); *see also, e.g., Flores v. Baca,* 117 N.M. 306, 871 P.2d 962, 968–69 (1994); *Romero v. Mervyn's,* 109 N.M. 249, 784 P.2d 992, 998 (1989). "A mental state sufficient to support an award of punitive damages will exist when the defendant acts with reckless disregard' for the rights of the plaintiff—*i.e.,* when the defendant knows of potential harm to the interests of the plaintiff" but fails to exercise care to avoid the harm. *Paiz,* 880 P.2d at 308.

Coker alleges that BANTSA knew about the "post no debit" order, and

continued to act fraudulently, deceitfully, oppressively, maliciously and outrageously towards [Coker] with a constant disregard of his request for refund of his life's savings with intention of using [BANTSA's] economic and financial power and position to the detriment of [Coker] and with the intention of benefiting [BANTSA] financially and of intentionally causing or recklessly disregard [sic] the probability of causing emotional distress to [Coker].

(Cplt., First Count, ¶ XV.)

■ The Court has doubts as to Coker's likelihood of success on his fraud and punitive damage claims. The jurisdictional determination, however, is not to be made by determining the merits of Coker's claim. "Moreover, even where those allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa,* 684 F.2d at 202; *Reddy v. Barclays Bank,* 773 F.Supp. at 657.

While the Court has its doubts, the Court cannot say with "legal certainty" that Coker will not be able to recover punitive damages. Because the claim for the $17,500 check and for punitive damages of three times that amount exceeds the $50,000 jurisdictional amount, the Court should not dismiss Coker's complaint.

### III. *BANTSA'S MOTION TO TRANSFER THE CASE TO THE DISTRICT OF NEW MEXICO SHOULD BE GRANTED*

■ This action involves BANTSA's payment in New Mexico of an allegedly forged $17,500 check drawn on Coker's account. This case has absolutely no connection to New York. This action should be transferred to the District of New Mexico.

The change of venue statute provides that:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought.

28 U.S.C. § 1404(a).

■ "The decision to transfer an action 'lies within the sound discretion of the district court.'" *Howard v. Four Seasons Hotels Ltd.*, 96 Civ. 4587, 1997 WL 107633 at *1 (S.D.N.Y. March 10, 1997) (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir.1993)); *accord, e.g., Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 672 (2d Cir.1994); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992); *Geiger v. E.I. Du Pont Nemours & Co.*, 96 Civ. 2757, 1997 WL 83291 at *3 (S.D.N.Y. Feb.27, 1997); *Raines v. Switch Mfg. Corp.*, 96 Civ. 2361, 1996 WL 413720 at *1 (S.D.N.Y. July 24, 1996) (Keenan, J.); 1 Michael C. Silberberg, *Civil Practice in the Southern District of New York* § 10.20; 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3847 at 368–70.

■ "Notwithstanding this discretion, a district court must adhere to certain limitations" imposed by § 1404(a). *Howard v. Four Seasons Hotels*, 1997 WL 107633 at *1; *accord, e.g., Geiger v. Du Pont*, 1997 WL 83291 at *3. Thus, a "court may transfer an action only if 1) the plaintiff could have brought the case initially in the proposed transferee forum; and 2) the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Howard v. Four Seasons Hotels*, 1997 WL 107633 at *1; *accord, e.g., Geiger v. Du Pont*, 1997 WL 83291 at *3.

As to the first limitation, Coker does not dispute that he could have brought this action in the District of New Mexico. Since BANTSA's allegedly wrongful acts—its paying of the $17,500 check and closing Coker's account—occurred at BANTSA's New Mexico branch, venue would have been appropriate in the District of New Mexico.[3]

As to the second limitation, the movant—here, BANTSA—must satisfy the "heavy" burden of demonstrating that a weighing of the appropriate factors dictates that the case be transferred. *E.g., Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) ("[t]here can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum"), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Howard v. Four Seasons Hotels*, 1997 WL 107633 at *2 ("Section 1404(a) requires the moving party to satisfy a heavy burden."); *Geiger v. Du Pont*, 1997 WL 83291 at *4 (same); *Raines v. Switch Mfg. Corp.*, 1996 WL 413720 at *1 (movant "has the burden of establishing the propriety of the transfer by a clear and convincing showing."); *Douglas v. Syracuse Univ. College of Law*, 94 Civ. 9195, 1995 WL 555693 at *1 (S.D.N.Y. Sept.18, 1995); *Dwyer v. General Motors Corp.*, 853 F.Supp. at 692.

■ "The moving party may meet its burden by applying the following established factors to guide the court's discretion:"

(1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice.

*Howard v. Four Seasons Hotels*, 1997 WL 107633 at *2; *accord, e.g., Geiger v. Du Pont*, 1997 WL 83291 at *4; *Douglas v. Syracuse Univ. College of Law*, 1995 WL 555693 at *1; *Boone v. K–Mart*, 95 Civ. 0615, 1995 WL 322137 at *1 (S.D.N.Y. May 26, 1995); *JM Computer Services, Inc. v. Schlumberger Techs., Inc.*, 95 Civ. 0437, 1995 WL 293956 at *1 (S.D.N.Y. May 12, 1995); *see also, e.g., Raines v. Switch Mfg. Corp.*, 1996 WL

---

**3.** "A 'district or division where it might have been brought' has been interpreted to mean a district where venue might have been proper and where the defendant would have been subject to process." *Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 691–92 (S.D.N.Y.1994) (citing cases). The venue statute provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... 28 U.S.C. § 1391.

413720 at *2, 1 Michael C. Silberberg, *Civil Practice in the Southern District of New York* § 10.20.

### Place Where the Acts Occurred

It is undisputed that BANTSA's allegedly wrongful acts occurred in New Mexico. No acts occurred in New York. Therefore, the first factor weighs heavily in favor of transfer. *See, e.g., Dr. Boy v. Nationwide Ins.*, 96 Civ. 3217, 1996 WL 350699 at *2 (S.D.N.Y. June 25, 1996); *Kolko v. Holiday Inns, Inc.*, 672 F.Supp. 713, 716 (S.D.N.Y.1987) ("The public interest requires that, 'localized controversies [be] decided at home.' ").

### Convenience of the Parties and Witnesses and Availability of Process to Compel the Attendance of Unwilling Witnesses

 " 'The convenience of both party and non-party witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted.' " *Howard v. Four Seasons Hotels*, 1997 WL 107633 at *2; *see also, e.g., Raines v. Switch Mfg. Corp.*, 1996 WL 413720 at *2 (the "convenience of the party and non-party witnesses is particularly important."); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3851 at 415–17.

 Generally, " '[w]hen a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.' " *Howard v. Four Seasons Hotels*, 1997 WL 107633 at *3 (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d at 218); *accord, e.g., Geiger v. Du Pont*, 1997 WL 83291 at *5. BANTSA has failed to put forth this information, instead stating in perfunctory fashion that all its witnesses are in New Mexico. (BANTSA Br. at 5; Strong Aff. ¶ 8.) Because BANTSA's challenged activities took place at its New Mexico branch, it is logical that its witnesses would be there.[4] In any event, it is undisputed that none of the witnesses in this case are located in New York. This factor therefore strongly supports transfer.

Coker's only argument for keeping the case in New York is that he will be inconvenienced if the case is transferred because "most of the flights (if not all) from Nigeria are to New York" and "New York is closer to Nigeria than New Mexico." (Coker's Aff. ¶ 12.) Coker has to travel from Nigeria to the United States in any event; taking an additional flight through to New Mexico is not significantly inconvenient. *See, e.g., Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 96 (S.D.N.Y.1995) ("The burden of traveling to Delaware from Europe is not much greater than traveling to New York.").[5] In fact, if the Court were to accept

---

4. It is also logical to assume that such witnesses are Bank employees who the Bank could bring to New York. The cost of bringing several willing witnesses to New York to testify, however, would be substantial, and this factor thus weighs in favor of transfer. *See, e.g., Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y.1980).

 Coker also asserts that one of BANTSA's witnesses is located in Arizona. (Coker Br. at 8; Coker Aff. ¶ 12.) Even New Yorkers who are often accused of not knowing the location of any area west of the Hudson River know that Arizona certainly is closer to New Mexico than to New York. (*See* BANTSA Reply Br. at 5.)

5. *See also, e.g., Canadian Kennel Club v. Continental Kennel Club*, 96 Civ. 6735, 1997 WL 361991 at *3, *4 & n. 3 (S.D.N.Y. June 30, 1997) (plaintiff's CEO, located in Ontario, Canada, "will have to travel to any trial of this action whether it is adjudicated in New York or Louisiana"; "Either way, travel is required, and the difference in travel time [of flying to transferee district], or rearranging one's travel plans be-

cause fewer flights exist [to transferee district] does not significantly affect the balance."); *Newton v. Thomason*, 91 C 6322, 1991 WL 281194 at *2 (N.D.Ill. Dec.30, 1991) (where plaintiff does not live in transferor district, "[a]ny additional burden incurred by [plaintiff] in pursuing this case in California as compared to Illinois is insufficient to warrant denial of the motion to transfer"); *Sports Eye, Inc. v. Daily Racing Form, Inc.*, 565 F.Supp. 634, 639 (D.Del.1983) (inconvenience of travel from New York to Los Angeles not significantly greater than New York to Wilmington, Delaware); *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821, 822 (D.Del.1976) ("Thus, the actual inconvenience to plaintiff of transferring this action consists of the additional expense and time involved in traveling [from Hicksville, New York] to Dallas instead of Wilmington. I agree with defendant that ... the additional expense is minimal. The additional travel time of approximately two or two and one-half hours while admittedly posing some inconvenience to plaintiff, would not appear to be significantly more burdensome.")

Coker's argument, the federal courts in New York (and, perhaps, a few other jurisdictions with U.S. "gateway" airports) would become the courts of convenience for most diversity cases involving foreign nationals. This factor weighs heavily in favor of transfer.

### Ease of Access of Proof

BANTSA's documents are in New Mexico. (Strong Aff. ¶ 12; BANTSA Br. at 5.) Coker asserts that the documents needed to try the case "could be electronically generated, [and] therefore could be generated in [BANTSA's] office in New York." (Coker Br. at 8; Coker Aff. ¶ 12.) In today's era of photocopying, fax machines and Federal Express, BANTSA's documents easily could be sent to New York, since not·many documents are involved. *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3853. As Judge Keenan has previously stated, "[e]ven assuming Defendant's documents are easily transported, however, this ease of transport weighs no more heavily in favor of this district than the proposed transferee district." *Raines v. Switch Mfg. Corp.*, 1996 WL 413720 at *2. This factor, therefore, is neutral.

### Plaintiff's Choice of Forum

"'[A] plaintiff's choice of forum is generally given substantial weight.'" *Geiger v. DuPont*, 1997 WL 83291 at *5 (quoting *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F.Supp. 320, 323 (S.D.N.Y.1996)); *see also, e.g., Howard v. Four Seasons Hotels*, 1997 WL 107633 at *3; *Town of Warwick, New York v. New Jersey Dep't of Environmental Protection*, 647 F.Supp. 1322, 1323 (S.D.N.Y.1986). However, when the connection between the forum and the facts and issues in the case is minimal, the "court need not give great weight to plaintiff's choice of forum." *Anadigics, Inc. v. Raytheon Co.*, 903 F.Supp. 615, 617 (S.D.N.Y. 1995); *see also, e.g., D'Anton v. Doll Factory*, 937 F.Supp. at 323; *Dr. Boy v. Nationwide Ins.*, 1996 WL 350699 at *3; *Bordiga v. Directors Guild of America*, 159 F.R.D. 457, 462–63 (S.D.N.Y.1995); *St. Regis Mohawk Tribe v. State of New York*, 774 F.Supp. 185, 189 (S.D.N.Y.1991); *Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 265 (S.D.N.Y.1989); 1 Michael C. Silberberg, *Civil Practice in the Southern District of New York* § 1021; 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3848 at 380–81 & n. 15.

Coker's choice of the New York forum also is entitled to lesser weight because Coker has chosen a forum that is not his residence. *See, e.g., Eskofot v. DuPont*, 872 F.Supp. at 96 (the "deference accorded to plaintiff's choice of forum, however, is diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred."); *Thomas America Corp. v. Fitzgerald*, 94 Civ. 0262, 1994 WL 440935 at *5 (S.D.N.Y. Aug.11, 1994) ("the plaintiff's choice of forum is accorded less weight where the plaintiff's chosen forum is neither plaintiff's home nor the place where the operative facts of the action occurred."); *De Jesus v. National R.R. Passenger Corp.*, 725 F.Supp. 207, 208 (S.D.N.Y.1989) ("A plaintiff's choice of forum is entitled to substantial weight.... But where a plaintiff chooses a forum that is not his residence, that weight is diminished."); *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F.Supp. 346, 349 (S.D.N.Y.1988); *Matra Et Manurhin v. International Armament Co.*, 628 F.Supp. 1532, 1536 (S.D.N.Y.1986).

In light of the nonexistent connection between this action and the Southern District of New York, Coker's choice of forum is entitled to little weight.

### The Forum's Familiarity with the Governing Law

This diversity case is governed by New Mexico law. However, the "fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer ... especially in an instance such as this where no complex questions of foreign law are involved." *Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y.1980); *Dwyer v. General Motors Corp.*, 853 F.Supp. at 694; *see generally* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3854 at 466–68; *but*

see, e.g., *Howard v. Four Seasons Hotels,* 1997 WL 107633 at *3 (transferee district court "is presumably more familiar with" that state's law, which weighs in favor of transfer) While of little weight, this factor certainly does not support keeping the case in New York.

### The Interest of Justice

Coker argues that transfer should be denied because "[d]efendant never complained of forum non conveniens until the court invited [the transfer] motion." (Coker Br. at 7; *see also* Coker Aff. ¶ 14.) Coker's contention that transfer is inappropriate because the Court invited the transfer motion is meritless:

> The broad language of 28 U.S.C. *§ 1404(a) would seem to permit a court to order transfer sua sponte.* While § 1404(b) contains the proviso that transfer may be ordered "(u)pon motion, consent or stipulation of all parties," there is no such limitation in § 1404(a). Cases addressing the question have been surprisingly few, but those that have arisen suggest such power does exist.

*Lead Industries Ass'n, Inc. v. OSHA,* 610 F.2d 70, 79 n. 17 (2d Cir.1979) (emphasis added & citations omitted); *see also, e.g., Atlantic City Elec. Co. v. I–T–E Circuit Breaker Co.,* 247 F.Supp. 950, 955 (S.D.N.Y. 1965) ("to the extent that any party has joined in the [court's suggested] motions to transfer, the motion may be regarded as though that party had originally moved."); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3844 at 329 & n. 2 (§ 1404(a)) "is broad enough that a judge can transfer on his own initiative") (citing cases.[6]

Coker also asserts that "[t]o transfer the case to New Mexico will be to frustrate this case and shut the door of justice against [him]." (Coker Aff. ¶ 13; Coker Br. at 8.) To the extent Coker's claim of unfairness is based on counsel's convenience or the additional expense of Coker's flying from Nigeria

to New Mexico (over the expense of flying from Nigeria to New York), those factors are entitled to little weight. *See, e.g., Raines v. Switch Mfg. Corp.,* 1996 WL 413720 at *3 (while consideration of parties' relative financial means can be appropriate, minimal financial inconvenience to plaintiff is not determinative, "especially where Plaintiffs and this action have no substantial contacts with this district."); *Dr. Boy v. Nationwide Ins.,* 1996 WL 350699 at *2 (" 'mere inconvenience to counsel is not an appropriate factor to consider on a motion to transfer venue' "); *Bordiga v. Directors Guild,* 159 F.R.D. at 463 ("First, this Court accords little weight to the convenience of plaintiffs' attorneys.... Second, the economic situation of the parties does not weigh heavily on this Court's decision."); *Thomas America Corp. v. Fitzgerald,* 1994 WL 440935 at *5 ("Although the court may also consider the relative means of the parties in deciding a transfer motion .... the relative economic ability of the parties to proceed with a case has rarely been a dispositive reason to grant or deny a transfer motion"); *Berke v. Gilreath Indus., Inc.,* 88 Civ. 8350, 1989 WL 129481 at *2 (S.D.N.Y. Oct.24, 1989) (Keenan, J.) (same); *Kolko v. Holiday Inns, Inc.,* 672 F.Supp. 713, 715–16 (S.D.N.Y. 1987) ("The convenience of plaintiff's attorney, without more, is not decisive in determining whether to grant or deny a transfer motion. The relative economic ability of the parties to proceed with a case has [also] rarely been a dispositive reason"); *Matra Et Manurhin v. International Armament Co.,* 628 F.Supp. at 1535 n. 5 ("The Court notes that mere inconvenience to counsel is not an appropriate factor to consider on a motion to transfer venue.").

### Balancing All the Factors

When all of these factors are taken into consideration, the balance clearly favors transfer to the District of New Mexico. The events in question happened in New Mexico; the witnesses and documentary proof are located in New Mexico. The "center of gravity" of this action thus clearly lies in New Mexico. *See, e.g., Bordiga v. Directors*

---

**6.** Coker's allegation that defendant's delay in bringing the motion requires denial of the motion is also without merit. *See, e.g., Kolko v. Holiday Inns, Inc.,* 672 F.Supp. 713, 716

(S.D.N.Y.1987); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3844 at 334–36 (citing cases).

*Guild,* 159 F.R.D. at 462, 463 ("The core determination under § 1404(a) is the center of gravity of the litigation....").

Moreover, Coker concedes that the case has no connection to New York, other than that it is more convenient for him to fly from Nigeria to New York than to New Mexico. While the City's tourism department might appreciate Coker's argument, the Court does not. As Judge Keenan has previously stated:

> Finally, the Court notes that the Southern District of New York is one of the busiest in the nation. The interests of judicial economy demand that parties may bring suit here only by showing a substantial connection between the cause of action and this district.

*Raines v. Switch Mfg. Corp.,* 1996 WL 413720 at *3. Here, as in *Raines,* this case has no connection to New York. It should be transferred to the District of New Mexico.

### CONCLUSION

For the reasons set forth above, the Court recommends that BANTSA's (1) partial summary judgment motion as to the Third Count of Coker's complaint (account closing claim) be granted, (2) motion to dismiss for failure to satisfy the amount in controversy requirement be denied, and (3) motion to transfer the case to the District of New Mexico be granted.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John F. Keenan, 500 Pearl Street, Room 1930, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Keenan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).