CHRISTOPHER FORTE et al., Respondents, et al., Plaintiffs, v KANEKA AMERICA CORPORATION, Appellant, et al., Defendants. (And a Third-Party Title.)

Second Department, August 26, 1985

### APPEARANCES OF COUNSEL

*Olwine, Connelly, Chase, O'Donnell & Weyher* (*Robert J. Kochenthal, Jr.,* and *William F. Sondericker* of counsel), for appellant.

*Deffina & Blau, P.C.,* for respondents.

### OPINION OF THE COURT

NIEHOFF, J.

On this appeal we are called upon to decide whether written stipulations of discontinuance which discontinue "all claims and causes of action that are asserted or could have been asserted arising out of the transactions set forth in the complaint * * * with prejudice, on the merits", should be given res judicata effect in the instant action which was pending when the stipulations were executed. We hold that the stipulations should be given res judicata effect and therefore the claims of the stipulating plaintiffs (hereinafter plaintiffs) and their privies asserted against the appealing defendant Kaneka America Corporation should be dismissed.

The facts are as follows:

Defendant Kaneka America Corporation (hereinafter KAC) is a wholly owned subsidiary of a Japanese corporation called Kanegafuchi Chemical Industry Co., Ltd. The parent company

has manufactured and sold a synthetic fiber called Kanekalon since the mid-1950's. KAC acts on its parent company's behalf to promote the sale of products containing Kanekalon and provides technical assistance to other companies which utilize the fiber in their products. Kanekalon fibers are intended for use in apparel, carpeting, curtains, drapes, batteries, wigs and hairpieces. Kanekalon is not made for medical use or for surgical implantation into the human body.

The action before us arises out of the alleged surgical implantation, by certain of KAC's codefendants, of synthetic fibers into the scalps of the male plaintiffs as "hair" to cure male pattern baldness. The female plaintiff sues derivatively for loss of consortium. All the plaintiffs with the exception of Orsola Forte were parties to previous actions premised upon the same surgical implantations, allegedly performed by the same defendants as the plaintiffs accuse in this action. The prior actions were commenced beginning in or about July 1979.

In addition to the actions previously instituted on behalf of the plaintiffs, an action was commenced in New York County on behalf of one Dennis Tanase. Mr. Tanase and the plaintiffs were all represented by Harold Wm. Suckenik, Esq. In each case, the complaint alleged that the particular male plaintiff underwent the Underwood Hair Adaption process which involved the suturing into his scalp of synthetic fibers by some of the named defendants and that injuries were sustained as a result of the procedure. With respect to KAC, each plaintiff alleged that said defendant manufactured Kanekalon and that KAC knew or should have known that Kanekalon had been used in hair implantation; that it was dangerous and unfit for implantation; that KAC failed to warn that Kanekalon was dangerous, improper and unfit for implantation; that KAC expressly or impliedly warranted Kanekalon to be merchantable and fit for the purpose to which it was being put; that KAC knowingly and willfully allowed Kanekalon to be sold for implantation purposes and that KAC conspired with the other defendants to defraud the plaintiffs and was guilty of gross negligence. Discovery was then conducted by the parties. Eventually, KAC moved for summary judgment in its favor in the *Tanase* New York County action. By memorandum decision of June 29, 1982 (McQuillan, J.), KAC's motion was granted and the *Tanase* action was dismissed. The decision reads in relevant part as follows: "Plaintiff concedes that 'the allegations concerning conspiracy and fraud have been withdrawn as being groundless and without foundation and fact. The only remaining theory of liability is "failure to warn."' Under this theory (failure to

warn) plaintiff clearly cannot establish a basis to impose liability upon defendant. Defendant's product — Kanekalon — was not unsafe as marketed. Another defendant, Dr. Underwood, used the product for an unintended and abnormal purpose. Even after being warned not to use Kanekalon for hair implantation, Dr. Underwood disregarded the warning in favor of his own supposed knowledge."

On January 13, 1983, the appeal by Tanase was dismissed by the Appellate Division, First Department, for failure to timely perfect.

Less than one week later, namely, on January 18, 1983, following correspondence between counsel, all of the actions in which Mr. Suckenik represented the plaintiffs were discontinued by written stipulations subscribed by Mr. Suckenik. The stipulations were also signed by the other attorneys of record and were then filed in the appropriate clerk's offices. The stipulations recited, insofar as here pertinent, that "the complaint herein and this action *and all claims and causes of action that are asserted or could have been asserted arising out of the transactions set forth in the complaint * * ** are hereby discontinued as against defendant Kaneka America Corporation *with prejudice, on the merits* and without costs to any party" (emphasis supplied). The stipulations specifically referred to the fact of the final adjudication (less than one week prior to the date of the stipulations) of the summary judgment motion decided in favor of KAC as against the similarly situated plaintiff, Dennis Tanase. The paragraph referring to the *Tanase* action begins with the word "WHEREAS", and recites that the *Tanase* claims are "the same as" those of the plaintiffs who were parties to each of the stipulations.

Meanwhile, in 1981, during the pendency of the prior actions, the instant action was commenced. In this action, the plaintiffs are represented by the firm of Deffina & Blau, P. C.

The complaint in the instant action alleges that the male plaintiffs sustained damages as a result of the implantation of synthetic hair fibers and that defendant KAC is liable because (1) it negligently failed to warn, inform or advise persons that it would be dangerous and hazardous to use synthetic hair fibers for implantation; (2) it expressly and impliedly warranted that the synthetic hair fibers were free of any defects or dangers, were of a merchantable quality and were fit for their intended purposes; (3) of strict products liability; and (4) of its negligence or carelessness.

In or about March 1981, KAC served an amended answer which asserted, *inter alia,* the affirmative defense that other prior actions were pending between the same parties on the same causes of action in another court. Shortly after obtaining and filing the stipulations of discontinuance referred to above, KAC brought on a motion (1) for leave to serve a supplemental answer asserting the affirmative defense of res judicata in substitution for its previously asserted affirmative defense of prior actions pending and (2) for partial summary judgment dismissing the claims of the plaintiffs as against KAC on the ground of res judicata. Special Term denied the motion in its entirety, holding that there was not "any indication on the face of the stipulations of discontinuance that they were intended to be a final adjudication or disposition or settlement of all outstanding claims which the plaintiffs had against KAC in other pending actions, including this one".

We find ourselves unable to agree with that conclusion.

CPLR 3217 provides that any party may discontinue an action by written stipulation. Subdivision (c) of the statute provides that "[u]nless otherwise stated in the notice, stipulation or order of discontinuance, the discontinuance is without prejudice". Clearly, that is not the case herein. Rather, the stipulations of discontinuance in this matter explicitly state that all claims "are hereby discontinued * * * with prejudice, on the merits and without costs to any party". The language could not be more plain.

The question arises then as to what effect is to be given the stipulations.

Neither KAC's research nor our own has uncovered a reported case in this State where a discontinuance with prejudice has been given res judicata effect in future litigation between the parties. Indeed, research reveals that our courts have deemed it within their discretion to limit or disregard, in the interest of justice, the "on the merits" or "with prejudice" language embodied in the parties' stipulations (*see, e.g., Matter of Horton,* 51 AD2d 856; *Stein v Siegel,* 50 AD2d 916; *Brown v Bullock,* 17 AD2d 424; *see also,* 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3217.10). However, no equities are present in the instant matter which would warrant such a restrictive approach. From the record before us it seems abundantly clear that after the *Tanase* decision, counsel for plaintiffs was keenly aware of the fact that a summary judgment decision against them was inevitable and that the stipulations were the product of that recognition. Moreover, simple justice and sound legal reasoning lead to

the conclusion that the doctrine of res judicata should be applied in this case. Support for our position is found in the writings of leading authorities who, in dealing with the subject, have stated that such discontinuances are to be given res judicata effect. As one treatise puts it in discussing CPLR 3217 (c), "an order granting discontinuance of an action or proceeding on application of the plaintiff is ordinarily not a decision on the merits; such termination is not res judicata and does not bar or estop the plaintiff from maintaining another action or proceeding for the same cause, *unless the order of discontinuance recites that the cause was discontinued or settled on the merits*" (7 Carmody-Wait 2d, NY Prac § 47:24, at 388; emphasis supplied).

Likewise, in his Practice Commentaries, Professor Siegel writes: "The stipulation or order of discontinuance, however, if that is the method used, may specify that it is to be on the merits, or 'with prejudice' (or any other equivalent terminology), and if it does it will have res judicata effect in future litigation on the same cause" (McKinney's Cons Laws of NY, Book 7B, CPLR C3217:15, p 1017).

If written stipulations of discontinuance are unambiguous, their interpretation "is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument" (*see, Teitelbaum Holdings v Gold,* 48 NY2d 51, 56). In the case at bar, the stipulations upon which KAC sought to rely before Special Term are unambiguous and spell out clearly that the parties intended that plaintiffs who were parties thereto were to be precluded from seeking future recovery upon any "causes of action that * * * could have been asserted arising out of the transactions set forth in the complaint[s]" in the discontinued actions. New York has adopted the transactional analysis approach in deciding res judicata issues (*O'Brien v City of Syracuse,* 54 NY2d 353, 357; *Matter of Reilly v Reid,* 45 NY2d 24). The "transactions" underlying the New York County action and these actions involve the surgical implantation of synthetic fibers into the scalps of the male plaintiffs. Every theory of liability asserted in the instant action either was already asserted in the earlier actions or "could have been asserted" in those actions. Stated differently, this is not a situation where the later suit is based on a different cause of action (*cf. Grandview Constr. Corp. v Lepore,* 4 Misc 2d 818, *revd on other grounds* 4 AD2d 960, *affd* 5 NY2d 897). Therefore, KAC was entitled to have res judicata effect given to these stipulations, and both branches of its motion should have been granted.

While it is true that the present action cannot be classified as "future litigation on the same cause" because it was pending when the stipulations were entered into, for purposes of res judicata the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect (*Williams v Ward,* 556 F2d 1143, 1154; Restatement [Second] of Judgments § 14 comment a). Hence, this action is not saved merely by the fact that it was pending when the stipulations were signed.

Although Orsola Forte, the wife of plaintiff Christopher Forte, was not a named plaintiff in the prior actions, we also dismiss her complaint against KAC because the claim of plaintiff Orsola Forte derives from that of her husband, and fails when the huband's claim is terminated (*Millington v Southeastern Elevator Co.,* 22 NY2d 498, 508).

BROWN, J. P., WEINSTEIN and LAWRENCE, JJ., concur.

Order of the Supreme Court, Kings County, dated November 2, 1983, reversed, on the law, with costs, and motion of the defendant Kaneka America Corporation, *inter alia,* for partial summary judgment dismissing the claims of the plaintiffs-respondents granted.