■ JAMES ROSSI, JR., et al., Respondents, v TWINBOGO COMPANY et al., Appellants, et al., Defendant. [597 NYS2d 390] — Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered March 22, 1991, to the extent that it granted plaintiffs summary judgment against defendant Twinbogo alone on their first and eighth causes of action, while severing and dismissing those causes of action as against the Bogoni defendants; granted plaintiffs summary judgment against defendant Bruce Paine on the seventh cause of action, while denying his motion for summary judgment thereon; and denied defendants' cross-motion for summary judgment to dismiss seven of the eleven causes of action on the basis of res judicata and collateral estoppel, while dismissing related affirmative defenses as well, unanimously modified, on the law, by reinstating the first and eighth causes of action as against the Bogoni defendants and granting plaintiffs summary judgment thereon, and otherwise affirmed, without costs. Order (same court and Judge) entered July 17, 1992, which *inter alia* granted, on reargument, reinstatement of the sixth cause of action (dismissed on an earlier reargument motion) against the Paine defendants and granted plaintiffs summary judgment thereon, unanimously affirmed, without costs.

Defendants Bruce and Natalie Paine were the tenants of apartment 16-B, a rent-stabilized unit in an upper West Side building in Manhattan which was scheduled for cooperative conversion. The sponsor of the conversion was defendant Twinbogo Company, whose general partners were defendants Paul and Irene Bogoni. Plaintiffs Janet and James Rossi, Jr. were tenants of another apartment, number 10-A, in the same building. The Rossis planned to purchase their own apartment and the adjoining apartment 10-B. They were also interested in acquiring another apartment for Mr. Rossi's parents. Aware that the Paines spent little time in their apartment, the Rossis inquired about having the Paines purchase their own unit at the insider price ($225,750), and then flipping the sale to the Rossis. The cooperative offering plan initially prohibited assignment of a prospective purchaser's subscription. Nevertheless, in July 1988 the younger Rossi allegedly reached oral agreement with the Paines to purchase the latter's "insider rights" for $65,000. This oral pact was re-

duced to writing in October 1988, at about the same time that the landlord/sponsor approved the sublease of the Paines' apartment to the elder Rossis. The sponsor's attorney, defendant Glushak, then passed the word to the younger Rossis that the sponsor had given its approval to this arrangement. Indeed, in December 1988 the subscription plan was amended to permit limited assignment of a tenant's right to purchase at the insider price. In March 1989 the Paine/Rossi agreement on assignment and assumption of the subscription for apartment 16-B was supplemented in greater detail. This agreement was then rejected by the sponsor for a series of technical reasons which were invalid, and which, it would later be established, the sponsor knew to be so. The sponsor, through its attorney, thereafter brought pressure upon the Paines to abrogate their flip-sale agreement with the Rossis, and when the Paines resisted, the sponsor threatened to charge the Paines with default of tenancy and breach of conditions of their own occupancy, again for reasons that were invalid. The Rossis determined that the best way to force the sponsor to sell them the shares for apartment 16-B would be for Bruce Paine to sue them for specific performance, and the Rossis agreed to underwrite the legal expenses. This strategy bore fruit when Paine obtained a temporary restraining order against the sponsor's sale of the apartment's shares to any third party. On the basis of that order, Paine and Rossi obtained from the bank an extension of the mortgage commitment to finance the purchase of the cooperative shares allocated to apartment 16-B. The action for specific performance caused the sponsor to turn up the pressure, threatening not to renew Paine's lease. On June 27, 1989, Paine suddenly caved in to the pressure, stipulating with Twinbogo (without any consultation with Rossi) to discontinue the lawsuit with prejudice. In a final coup de grace to the rights of his silent beneficiary and underwriter of the lawsuit, Paine allowed the stipulation to state that "no person not a party has an interest in the subject matter of the action", a statement obviously known to be false by Paine and his adversary, including the latter's attorney. It would later come to light that even though Rossi had contracted with the Paines for the buy-out of the latter's insider rights at $65,000, Twinbogo had topped that offer by $15,000 in a separate written agreement with the Paines.

The younger Rossis, now faced with a dilemma in securing suitable housing for the frail elder Rossis whose sublease was about to be terminated, initiated the instant litigation, charg-

ing various contractual breaches and tortious interference with contractual relations, to which defenses of res judicata and statute of limitations were raised, defendants citing the discontinuance of the earlier litigation with prejudice.

The IAS Court rejected the defenses of res judicata and collateral estoppel and granted plaintiffs summary judgment on their causes of action alleging tortious interference with their assignment and assumption contract with the Paines, as well as intentional interference with the agreement between those parties to sue Twinbogo. Those causes of action were dismissed, however, against the individual defendants Bogoni and Glushak. Summary judgment was also granted plaintiffs to the extent of upholding their equitable assignment to purchase apartment 16-B, as well as their claims for damages against the Paines for repudiating the agreements to purchase and flip, and to secure those rights by litigation. Only the causes of action alleging breach of the oral agreement (as barred by the statute of frauds) and deceptive business practices under the Martin Act (no private right of action existing thereunder) were dismissed in their entirety. The sponsor and its general partners appeal, as do the Paines from denial of their cross-motion for summary judgment on a counterclaim for rent and utilities for apartment 16-B. Plaintiffs appeal the dismissal of their action against the individual sponsorship defendants.

On reargument, the court vacated the award of summary judgment against the Paines for breach of the purchase and assignment contract with plaintiffs, and against Natalie Paine for breach of the litigation agreement, she not having been a party to that latter agreement. On plaintiffs' subsequent motion for reargument, summary judgment on their cause of action for breach of the purchase and assignment contract was reinstated against the Paines.

The defenses of issue preclusion were properly rejected. The younger Rossis, although underwriting the legal effort against the sponsor, were completely dependent upon Bruce Paine's pursuit of that lawsuit. Even though Paine's discontinuation of the suit was by stipulation with his adversary, that decision was purely unilateral with respect to Paine's partner in interest, thus depriving plaintiffs herein of a full and fair opportunity to litigate the issue (cf., *Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 458-459). A stipulation to discontinue with prejudice does carry res judicata authority (*Forte v Kaneka Am. Corp.*, 110 AD2d 81, 85), but a party cannot be precluded from raising an issue in his own right in subsequent litigation,

absent some privity to the proceedings disposing of the prior claim *(see, Weiner v Greyhound Bus Lines,* 55 AD2d 189, 192). Whatever privy relationship existed between the Rossis and the Paines terminated upon the latter's unilateral decision to terminate the lawsuit.

The record clearly establishes contractual relationships between the Rossis and the Paines which were known to the Twinbogo defendants. Natalie, holding an equal property interest with her husband Bruce *(Spitalnik v Springer,* 59 NY2d 112; *Lolli-Ghetti v Lolli-Ghetti,* 165 AD2d 426, *lv denied* 78 NY2d 864), and having concededly joined in the flip-sale agreement with the Rossis, is equally liable for that breach.

The essential elements of tortious interference with contract or agreement include the existence of an agreement, knowledge of that agreement on the part of the tortfeasor, and intentional and unjustified interference therewith, causing damage *(S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp.,* 108 AD2d 351, 354). Each of these elements is established in the record by Twinbogo's own admission, and thus does not require a trial. Summary judgment on those issues was appropriate.

The IAS Court erred, however, in dismissing the first and eighth causes of action as against the Bogonis, holding that those defendants were corporate officers who had not been shown to be operating outside the scope of their employment. But Twinbogo was a partnership, not a corporation, and its tort liability is thus imputable to the general partners, jointly and severally (Partnership Law § 26; *Pedersen v Manitowoc Co.,* 25 NY2d 412). The grant of summary judgment to plaintiffs against Twinbogo on the first and eighth causes of action should have included the Bogoni defendants as well. We so hold, even in the absence of specific notice of appeal to that effect, under this Court's inherent power to search the record on any party's motion for summary judgment *(Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106). Concur— Sullivan, J. P., Carro, Wallach and Kupferman, JJ.