**Richard BREEDEN, Trustee, the Bennett Funding Group, Inc., Plaintiff,**

v.

**TRICOM BUSINESS SYSTEMS, INC. Defendant,**

**No. 02–CV–0029.**

United States District Court, N.D. New York.

Jan. 21, 2003.

Hancock & Barclay, LLP, Syracuse, NY (Robert B. Liddell, of counsel), for Plaintiff and Counter Defendant.

Shapiro, Rosenbaum, Liebschutz & Nelson, Rochester, NY (David H. Ealy, of counsel), for Defendant and Counter Claimant.

Javitch, Block, Eisen & Rathbone, Cleveland, OH (Kenneth Bruce Baker, of Counsel).

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

## BACKGROUND

Cleveland Microsystems, Inc., d/b/a/ Tricom Business Systems ("Tricom") is in the business of selling, leasing and servicing office equipment, mainly copiers and fax machines. Aloha Leasing, a division of the Bennet Funding Group, Inc.("BFG"), manufactured, distributed, sold and services office equipment. In May 1992, Tricom and BFG entered into a Private Label Vendor Agreement ("PLVA") that called for Tricom to assign all rights to certain equipment leases for office equipment on a continuing basis to BFG, and Tricom did so by assigning all rights to certain lease contracts with Tricom's customers located in the State of Ohio to BFG, in exchange for advance funding on these leases. BFG would then replace Tricom as the lessor, collecting the monthly rental payments from Tricom's customers, and Tricom would receive an advance fee based on the value of the equipment lease.

Among the rights obtained by BFG in these assignments were: (1) legal ownership of the leased equipment, (2) the right to collect rent due under the assigned leases, and (3) the right to repossess the leased equipment in the event of a default. Tricom warranted that it had no knowledge of any fact that would impair the value of the assigned leases, (b) the assigned leases were genuine and enforceable, (c) that it would not modify, terminate or renew any assigned lease without BFG's permission, (d) that the assigned leases and related equipment had been accepted by the lessee, and (e) that it would not accept the return of any leased equipment without BFG's permission.

Tricom and BFG also entered a CPC Funding Agreement ("CPC") whereby Tricom would sell the equipment directly to BFG, and leased back to Tricom's customers. BFG would then bill the customers for services and supplies rendered by Tricom, collect the bill payments and distribute them to Tricom. Tricom alleges that while the vast majority of the leases assigned under Tricom to BFG, as well as equipment purchased by BFG and leased back to Tricom's customers, expired by the terms of the individual leases, forty leases currently have a balance outstanding due to unpaid service fees due under the terms of the CPC agreement.

BFG contends that in the accounts covered by the PLVA, Tricom wrongfully took possession of certain equipment belonging to BFG. Tricom denies this, and maintains that there may have been about eight accounts that involved taking of equipment, but the equipment was considered abandoned and removed only after Aloha Leasing did not respond to the lessees requests to remove the equipment or provide instructions relating to its return. Tricom claims that BFG is liable for the costs of removal and storage of this equipment and

for failure to remit to Tricom the monies it had collected for services Tricom had formerly performed on the equipment.

During the term of the PLVA and CPC funding agreements, Tricom formed an Ohio joint venture entity formerly known as Cajo/Tricom Association ("the Association"). It was certified as a minority joint venture by the State of Ohio as part of that state's statutory affirmative action program that sought to award contracts to minority owned, managed or operated businesses.

The Association became the authorized sales and leasing representative in the State of Ohio for Panasonic Communications & Systems and then obtained two lease contracts with State of Ohio, one for the Marion Correctional Facility, the second for the Ohio Board of Employment Services. These two lease accounts were assigned to BFG under the terms of the PLVA and CPC agreements. The assignment provided that BFG would have recourse if the State of Ohio defaulted and Tricom repurchased the lease.

In January 1995, the Association concluded operating as a joint venture under Ohio law, thereupon, it was decertified as a minority joint venture by the state, and as a Panasonic distributor. The state also canceled it leases with the Association. The leased equipment was sold to the State of Ohio by Aloha Leasing on behalf of BFG. Tricom claims that the purchase price included fees owed for services performed on the equipment and supplies furnished to the state lessees by Tricom, but it has never received payment from BFG.

BFG's complaint alleges that Tricom repossessed equipment without authorization from BFG; had knowledge of facts that impaired the validity of leases assigned to BFG; modified, terminated and interfered with leases assigned to BFG; and failed to disclose that certain leases were not en-forceable according to their terms. The relief sought is monetary damages. Tricom's counterclaim alleges breach of contract, account stated, unjust enrichment and conversion, and asks for monetary damages.

Several motions are currently pending before the court, and each one had been opposed. Defendant Tricom moves pursuant to 28 U.S.C § 1404(a) to transfer the case to the Northern District of Ohio, Eastern Division. Plaintiff BFG moves pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings, and pursuant to Fed.R.Civ.P 15(a) to amend the counterclaim reply w/ Exhibits A and B. Defendant Tricom moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or, in the alternative, for additional time pursuant to Fed.R.Civ.P.56(f) to respond to plaintiff's motion for judgment on the pleadings or summary judgment or in the second alternative, to cross move for judgment on the pleadings; for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or for summary judgment pursuant to Fed.R.Civ.P.56(c) with a request for a hearing.

## DISCUSSION

A defendant may move to transfer a civil case for the convenience of parties and witnesses and in the interest of justice to any other district or division where it might have originally been brought. 28 U.S.C. § 1404(a). Based upon the papers submitted by the respective parties, the court concludes that it may consider defendant's motion because this action could have been brought in the Northern District of Ohio. Defendant has the burden of establishing the propriety of transfer by clear and convincing showing. *Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.) *cert. denied,* 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). The court

considers several relevant factors: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the place where the operative facts occurred: (4) the relative ease of access to sources of proof; (5) the convenience of witnesses; (6) the availability of process to compel attendance of unwilling witnesses; (7) the forum's familiarity with the governing law; and (8) trial efficiency, means of the parties and the interest of justice. *Viacom International, Inc. v. Melvin Simon Productions, Inc.*, 774 F.Supp. 858, 868 (S.D.N.Y.1991). Each factor need not be accorded equal weight. It is well established that determining whether a transfer is warranted pursuant to § 1404(a) lies within the broad discretion of the district court and is determined upon notions of convenience and fairness on a case by case basis. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 117 (2d Cir.1992).

The presence of forum selection clauses are a prominent though not dispositive consideration in a court's determination of whether to transfer a case in the interest of justice. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). However, when a commercial agreement contains a forum selection clause, there is a strong policy in favor of enforcing such a clause. *Chasser v. Achille Lauro Lines*, 844 F.2d 50, 54 (2d Cir.1988), aff'd, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Mediterranean Shipping Co., v. Pol–Atlantic*, 229 F.3d 397, 405 (2d Cir.2000)(there is a "heavy presumption" in favor of enforcing forum selection clauses). Once a forum selection clause is deemed valid, the burden shifts to the opposing party to demonstrate exceptional facts why he should be relieved of his contractual duty. *Strategic Marketing & Communications v. Kmart*, 41 F.Supp.2d 268, 273 (S.D.N.Y.1998).

Regarding factors 1 and 2, in its Memorandum of Law, defendant Tricom states "In light of the fact that the parties have a forum selection clause in their contracts, and plaintiff commenced this action in the New York State Supreme Court in Onondaga County, New York, the initial choice of law expressed in the parties contract is entitled to deference, and usually forecloses further consideration of convenience of the parties in favor or plaintiff's choice of forum." (Def.'s Mem.of Law, p. 14–15)

The forum selection clause also contains a choice of law provision which provides New York law is to govern the contract. The presence of this provision disfavors transfer. *Ferens v. John Deere Co.*, 494 U.S. 516, 530, 110 S.Ct. 1274,1283, 108 L.Ed.2d 443 (1990)(diversity cases should be tried in the "forum that is at home with the state law that must govern the case.").

Factors one and two do not favor transfer.

The third factor, the place where the underlying facts took place, is a wash, there was activity in Ohio and New York while defendant Tricom entered into a series of leases for office equipment rentals with entities located in Ohio, and its records relating to these leases are located there, but the instant case is for breach of the PLVA contract, and the Bankruptcy Estate's involvement with Tricom and its business activities relating to the leases assigned to BGF under the PLVA took place in New York. These activities included the entry into and the servicing of the leases, and maintaining and servicing of the leases. See, e.g. *Fintech Research Associates, Inc. v. Dynagro Corp.*, 1998 WL 148423 at *3 (S.D.N.Y. March 27, 1998)(where fact occurred in both New York and California, location where operative acts occurred does not favor either party).

The fourth factor is also a wash. Documents describing and implementing the agreements between the parties are located both in Ohio and New York, and easily can be photocopied for production in discovery. See, e.g., *Coker v. Bank of America*, 984 F.Supp. 757, 766 (S.D.N.Y. 1997)("In today's era of photocopying, fax machines and Federal Express," location of documents factor is neutral."); *Falconwood Financial Corp. v. Griffin*, 838 F.Supp. 836, 841 (S.D.N.Y.1993)(location of records is "not a compelling consideration when records a re easily portable.")

■ The fifth factor, the convenience of witnesses, may be the most important factor in the transfer analysis. *Coker v. Bank of America*, 984 F.Supp. 757, 765 (S.D.N.Y.1997). To succeed on a transfer motion, however, the moving party, here, defendant Tricom, must provide the court with a specific list of who will be inconvenienced by the present forum witnesses and general statements of what their testimony will cover. *Factors Etc. Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978). In attempting to meet this burden, Tricom must provide precise information, in affidavit form, about the witnesses it intends to call and the anticipated areas of their testimony, so that the court can intelligently weigh the factor of witness convenience. *Riso Kagaku Corporation v. A.B. Dick Co.*, 300 F.Supp. 1007 (S.D.N.Y.1969). While Tricom has made a general statement of the testimony to be given from witnesses from eight different Ohio companies that will be inconvenienced by the current forum, these witnesses have not been specifically identified. The accessibility of anticipated, unnamed witnesses is a factor which courts have generally considered as entitled to little weight if any. *Car–Freshner Corporation v. Auto Aid Manufacturing Corporation*, 438 F.Supp. 82, 85 (N.D.N.Y.1977).

Tricom has specifically identified four witnesses employed by the State of Ohio who will testify about Ohio's minority programs, and five Ohio witnesses who will testify regarding Tricom's counterclaim. The testimonies here, will be connected only tangential to the Bankruptcy Estate's claims to breach of contract and warranty, fraud and unjust enragement.

On the other hand, plaintiff has named fourteen witnesses who reside in the Northern District of New York and has set forth the matters at issue that they will testify about. Given this fact, the court finds that the convenience of witnesses mitigates against transfer.

The sixth factor, the availability of process to compel attendance of unwilling witnesses. It appears that the parties will have difficulty obtaining process to compel witnesses whether the trial is held in New York or Ohio. As one of the parties may be disadvantaged by the unavailability of process to compel witnesses no matter where the trial is held, this factor does not favor either party. Moreover, neither party has demonstrated that these witnesses will not appear voluntarily or that the use of videotaped depositions will not be adequate here, and in the absence of such a showing this factor will be less significant. *Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923, 931 (W.D.Mo.1985).

The seventh factor, the forum's familiarity with the governing law, does not favor transfer. The parties' contract contains a choice of law clause stating that New York law will govern disputes arising thereunder. The court finds that there is no reason not to enforce this contract term. Courts have routinely enforced similar choice of law provisions even when a party challenges the contract as fraudulent or claims of fraudulent inducement exist. *Turtur v. Rothschild Registry International Inc.*, 26 F.3d 304, 309–10 (2d Cir.

1994). *Palace Exploration Co. v. Petroleum Development Co.*, 41 F.Supp.2d 427, 438 (S.D.N.Y.1998). Hence, the court finds that the Northern District of New York is more familiar with the governing law of the case.

The eighth factor, trial efficiency, the means of the parties and the interest of justice. Docket congestion will not be a factor in considering trial efficiency in this case because this court can provide a trial as soon as the parties are ready. *National Super Spuds, Inc. v. New York Mercantile Exchange*, 425 F.Supp. 665, 668 (S.D.N.Y.1977).

The means of the parties weighs against transfer. The bankruptcy estate is composed of limited resources which the Trustee has an obligation to maintain and preserve. Thus, forcing the Trustee to litigate the current action in Ohio will impose an additional expense on him that would he would otherwise not have to incur. Also, defendant Tricom is still conducting an ongoing business that is not, to this court's knowledge, in bankruptcy. As a result, it is in a better position financially to litigate the current proceedings in New York as opposed to the Trustee litigating his claims in Ohio.

For the reasons set forth above and in the interest of justice, Tricom's motion to transfer will be denied. Tricom has not met its heavy burden of showing that a weighing of factors favors transfer, sufficiently to overcome plaintiff's choice of forum in this District.

*The other pending motions:*

The remaining motions in this case are intertwined with a prior action between the parties and are concerned with the application or not of res judicata and/or collateral estoppel.

In 1998 May, BFG instituted an adversary proceeding against Tricom to Avoid and Recover Preferential Transfers. The action was brought under 11 U.S.C. § 101, § 547 and § 550 (the "Bankruptcy Code"). The complaint alleged that one or more of the insolvent bankruptcy debtors made BFG payments due Tricom with bankruptcy funds which they had illegally commingled into a single account. The relief sought was avoidance of the transfers by the debtors and repayment of the funds to the bankruptcy estate by Tricom.

Tricom entered a defense to BFG's lawsuit and counterclaimed claiming that BFG had breached its contract with Tricom by refusing to pay $120,000 due Tricom under the terms of their contract, and that BFG's wrongful withholding of funds due Tricom constituted a conversion of property belonging to Tricom.

BFG and Tricom settled this lawsuit in Stipulation of Discontinuance dated January 18, 2001. The settlement document stated that "the parties had reached an amicable resolution, in complete satisfaction of their claims," and stipulated and agreed that the "matter be discontinued with prejudice and without prejudice or costs to either party." BFG commenced the current lawsuit on December 7, 2001, in the New York State Supreme Court, Onondaga County, and it was removed to this court on January 8, 2002, by defendant Tricom on diversity of citizenship grounds pursuant to 28 U.S.C § 1441. A federal court sitting in diversity jurisdiction will, of course, apply the law of the forum state on outcome determinative issues. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 80, 58 S.Ct. 817, 823, 82 L.Ed. 1188 (1938).

The complaint asserts that Tricom had breached the PLAV contract it had entered with BFG by unauthorized repossession of BFG equipment; interfering with leases assigned to BFG; non-disclosure of critical facts about the validity of these

leases; breached the warranty section of the PLAV; misrepresentation and fraud concerning the ownership of leased equipment and unjustly enriching itself by retaining monies owed to BFG.

Tricom answered the complaint and set forth four counterclaims:

(1) BFG breached its contract with Tricom by collecting monies for services and supplies provided by Tricom but failing and/or refusing forward these the funds collected to Tricom despite demand.

(2) Account stated in the amount of $153,991.79.

(3) BFG unjustly enriched itself by accepting Tricom performance under the contract, and then retaining the benefits thereof without making the payments due Tricom for them.

(4) BFG's malicious and intentional retention of the funds due Tricom constitutes a wrongful conversion and permits an award of punitive damages.

The specific motions:

█ Plaintiff BFG first moves for judgment on the pleadings or, alternatively, summary judgment dismissing defendant Tricom's instant counterclaims as being barred by the doctrines of *res judicata* and collateral estoppel because the same counterclaims were pleaded in the prior adversary proceeding between the parties and were dismissed with prejudice in the stipulation settling that case

BFG's second motion requests permission to amend its counterclaim answer to include the affirmative defenses of *res judicata* and collateral estoppel.

Defendant Tricom papers include opposition to BFG's motion for judgment on the pleadings, or in the alternative, a motion for additional time to respond to BFG's motion for judgment on the pleadings/for summary judgment under Fed. R.Civ. P. 56(f), or in the second alternative, for judgment on the pleadings, to dismiss, or for summary judgment, with a request for a hearing.

Tricom has moved for additional time to respond to establish that the Stipulation of Discontinuance was never intended to preclude a dismissal of its counterclaims, but only dispose of the preference claims. If Tricom's motion for additional time is denied, it would move the court to dismiss BFG's current action by reason of it being barred by the doctrines of *res judicata* and/or claim preclusion.

Rule 12(c) motions are determined solely on the pleadings, while motions for summary judgment under Rule 56 of the Fed. R.Civ.P. may be decided based on other material. *Deming v. Turner*, 63 F.Supp. 220, 222 (D.D.C.1945). However, beyond this distinction the two motions are quite similar. *Kraftsman Container Corp. v. Finkelstein*, 461 F.Supp. 245, 250 (E.D.N.Y.1978) (An unsupported Rule 56 motion is "indistinguishable" from a Rule 12(c) motion). Rule 12(c) motions like Rule 56 motions, are designed to resolve claims on the merits. *Republic Steel Corporation v. Pennsylvania Engineering Corporation*, 785 F.2d 174, 177 n. 2 (7th Cir.1986). In accord with this policy, courts are granted the discretion to treat a motion for judgment on the pleadings into one for summary judgment. *Id.* at 178. In the instant case, both parties have presented materials pertinent to a Rule 56 proceeding, and the defendant has, in fact, stated that "the motion would be more properly considered as one for summary judgement." (Def's Memorandum of Law p. 11). In view of these occurrences, the court will consider plaintiff's motion as one for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with affidavits, if any, show that there is no genuine issue as to any material issue of fact and that the moving party is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant properly supports its motion pursuant to Rule 56(c), the burden shifts to the non-moving party to go beyond mere pleadings and present evidence through affidavits, depositions or admissions on file to show that there is no genuine issue of fact for trial. *Id.* at 324, 106 S.Ct. 2548. A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmovant. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials or vague statements. *Trap Rock Industries, Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir.1992).

Plaintiff seeks summary judgment dismissing all of defendant's counterclaims contending that they are barred by the doctrines of *res judicata* and collateral estoppel.

■ The doctrine of res judicata prohibits a party from relitigating any claim which could have been or which should have been litigated in a prior proceeding. *Hyman v. Hillelson*, 79 A.D.2d 725, 726, 434 N.Y.S.2d 742 (N.Y.A.D.1980), aff'd. 55 N.Y.2d 624, 446 N.Y.S.2d 251(19), 430 N.E.2d 1304. Pursuant to the doctrine of res judicata, once a claim is brought to final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy. *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158.

The doctrine of collateral estoppel or claim preclusion rests upon the all important principle that justice requires that every cause be once fairly and impartially tried; but the public tranquility demands that, having been once so tried, all litigation on that question, and between those parties, should be closed forever. *Ryan v. New York Telephone Company*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487.

New York Civil Practice Act § 3217 provides that any party may discontinue an action by written stipulation. Subdivision (c) of the statute states "[u]nless otherwise stated in the notice, stipulation or order of discontinuance, the discontinuance is without prejudice." In this case, the stipulation of discontinuance expressly states that "the above captioned matter be discontinued with prejudice and without cost to either party." The language could not be any clearer.

The question to be answered then is what effect is to be given to the stipulation.

■ "It is well settled that a stipulation of discontinuance with prejudice does carry *res judicata* authority with respect to the same cause. However, the language 'with prejudice' is narrowly interpreted when the interests of justice, or the particular equities involved, warrant such an

approach." *Dolitsky's Dry Cleaners v. Y L Jericho*, 203 A.D.2d 322, 610 N.Y.S.2d 302, 303 (2d Dept.1994). In *Forte v. Kaneka Corp.*, 110 A.D.2d 81, 493 N.Y.S.2d 180 (2d Dept.1985). The court noted that: [n]either [defendant's] research nor our own has uncovered a reported case in this State where a discontinuance with prejudice has been given *res judicata* effect in future litigation between the parties. Indeed, research reveals that our courts have deemed it within their discretion to limit or disregard, in the interests of justice, the "on the merits" or "with prejudice" language embodied in the parties stipulations. (See, e.g. *Matter of Horton*, 51 A.D.2d 856, 379 N.Y.S.2d 569; *Stein v. Siegel*, 50 A.D.2d 916, 377 N.Y.S.2d 580; *Brown v. Bullock*, 17 A.D.2d 424, 235 N.Y.S.2d 837; see also, 4 Weinstein–Korn–Miller, N.Y. Civ Prac, par 3217.10).

In *Forte*, the court found that the equities did not warrant such an approach because the plaintiff was facing an "inevitable" summary judgment ruling, but in this action no court has evaluated the merits of this dispute, and there is little question that Tricom and BFG intended to continue to press their respective claims against one another as demonstrated by the communications between their counsels contained in the record.

It would be inequitable to grant BFG's motion to deny Tricom its day in court where its can defend BFG's lawsuit, and continue to seek the funds it alleges were due from BFG.To hold otherwise would elevate form over substance, which is exactly what equitable principles are designed to prevent.

Accordingly, for the reasons stated above,

Defendants motion to transfer the case to the Northern District of Ohio, Eastern District is **DENIED**,

Plaintiff's motion for judgment on the pleadings or, alternatively, summary judgment dismissing Defendant's counterclaims is **DENIED**,

Plaintiff's motion to amend its counterclaim reply is **DENIED**,

Defendant's motion for judgment on the pleadings, or, in the alternative, for more time to respond to Plaintiff's motion for judgment on the pleadings, or in the second alternative, for judgment on the pleadings, dismissal of the complaint or for summary judgment is **DENIED**.

**IT IS SO ORDERED.**